ALICIA A. SMITH

*v.*

RICHARD SMITH.

On an application for temporary alimony and counsel fee, in a suit for divorce for extreme cruelty, it was argued that from the statements of the bill, the cruelty complained of was the result of the husband's insanity.—*Held,* that

a wife is equally entitled to protection against extreme cruelty on the part of her husband, where his malevolence is the result of insane delusion, as where it springs from jealousy or hatred.

Bill for divorce for extreme cruelty. Motion for alimony *pendente lite* and counsel fees, and other provision for the conduct of the suit.

*Mr. S. Tuttle*, *Mr. J. D. Bedle* and *Mr. C. Parker*, for the motion.

*Mr. J. W. Taylor* and *Mr. T. N. McCarter*, contra.

THE CHANCELLOR.

The motion is made upon the bill, and the affidavits thereto annexed. The parties were married November 7th, 1854, and from that time up to the time, August 28th, 1880, when the complainant left her husband, they resided in Newark together. He still resides there, and carries on, as he has for many years past, a large and prosperous business as a jeweller in that city. When the complainant left her husband she went to Paterson, where she has ever since lived. She alleges that she was driven from her husband's house, and constrained to seek refuge elsewhere, by his extreme cruelty towards her. According to the bill, the cruelty consisted of (among other things) violent and threatening conduct, a violent blow which he struck her on the 4th of August, 1880, and a hideous charge of criminality which it is unnecessary now to particularize. It is urged, in opposition to the motion, that on the statements of the bill itself the defendant must have been insane when he committed the acts complained of. But not only does it not appear that he has ever been adjudged to be insane, but it appears by the bill that, as before stated, he is engaged in a large and successful business, and has property, including his investment in his business, to the amount of over $50,000, all of which it seems he himself manages. From this fact it is a legitimate deduction that if he

Smith *v.* Smith.

is insane at all, his insanity must be partial merely, and does not extend to his business faculties, nor affect him in his ordinary intercourse with society. A husband is, by law, required to support his wife, and if, by his extreme cruelty, he expels her from his house, he may be compelled to support her elsewhere. Nor is she required by the obligations of her matrimonial duty to abide with him when his cruel treatment of her through malevolence, whether the result of insanity or not, renders it dangerous to her life or health to continue to live under the same roof with him. It is sometimes difficult to distinguish between the malevolence which is the offspring of insanity and that which is the result of the sway of bad and unbridled passion. For example, common observation has taught the unreasonableness and inconsiderateness of jealousy in a sound mind, and its supreme and absolute control over its subject. Eminent judges have expressed an unwillingness to refuse the protection of the court to a wife against cruelty on the part of her husband, where the excuse offered is eccentricity or a peculiarly excitable state of mind, the result of past disease. Said Dr. Lushington, in *Dysart* v. *Dysart, 1 Rob. E. 106, 116*:

"When I find conduct towards a wife likely to prove dangerous to her safety, but not in other cases, I shall consider it within my cognizance, whatever may have been the cause thereof, whether having arisen from natural violence of disposition, from want of moral control, or from eccentricity. It is for me to consider the conduct itself, and its probable consequences; the motives and causes cannot hold the hand of the court unless the wife be to blame, which is a wholly different consideration."

And Sir Creswell Creswell, judge ordinary, in *Curtis* v. *Curtis, 1 Sw. & Tr. 192, 213*, after quoting with approbation the above language of Dr. Lushington, proceeds to say:

"If, indeed, an act of violence were committed under the influence of an acute disorder, such as brain fever, and it were made clear that, the disorder having been subdued, there was no danger of a recurrence of such acts, the case would be different. But if the result of such a disease has been a new condition of the brain, rendering the party liable to fits of ungovernable passion, which would be dangerous to a wife, then undoubtedly this court is bound to emancipate her from such peril."

Smith v. Smith.

It would not be proper or justifiable in this case, at this stage, to conclude that the defendant's conduct is the result of insanity or insane delusion, and therefore it is not necessary now to determine whether, if the cruelty complained of be shown to be the result of insane delusion in a mind in other respects sound, it would not be the duty of the court to relieve the complainant by a divorce from bed and board from the risk to which she would be subjected by living with her husband. Nevertheless, it is not out of place to say that it seems to me clear that a wife is equally entitled to protection, under our divorce law, against extreme cruelty on the part of her husband, where his malevolence is the result of insane delusion, as where it springs from jealousy or hatred. A distinction is to be made between such a case and a case where the husband is shown to be insane generally. In the latter case, the wife may obtain protection through appropriate proceedings to cause her husband to be declared a lunatic. A man may, as is well known, be mentally competent to transact all business, and still be the subject of insane delusion as to a particular individual. Or, as Lord C. J. Cockburn expresses it in *Banks* v. *Goodfellow*, L. R. (*5 Q. B.*) *549, 560*:

"There often are delusions, which, though the offspring of mental disease, and so far constituting insanity, yet leave the individual in other respects rational, and capable of transacting the ordinary affairs and fulfilling the duties and obligations incidental to the various relations of life."

Where a man is capable of managing his estate and discharging all his duties towards every one else except his wife, whom he maltreats because of insane delusion as to her, rendering association with him by her unsupportable and unsafe, and perhaps even endangering her life, it would be irrational to deny her the protection of the law which accords to a wife a separate maintenance out of her husband's estate, when necessary to protect her from his brutality. The motion will be granted. The temporary alimony will be fixed at the rate of $1,000 a year, payable in equal monthly installments, and to begin with the date of the filing of the bill, which appears to have been some months after the complainant left her husband. If it should be made to

appear that (as was stated to be the case on the argument) there are unpaid debts contracted by the wife against her husband for her support, the amount of which ought, in justice, to be allowed him, on account of the alimony hereby ordered, the allowance will be made, but it does not appear so now. It is to be observed that the allowance hereby provided for does not cover the time between her departure and the filing of the bill. He was bound to support her during that period, and the practice of beginning the alimony with the commencement of the suit has arisen from the presumption that up to that time the wife was able to obtain her support from the husband. If the debts referred to are for the complainant's maintenance during that period, they will not, if they are not unreasonable, be considered in the alimony. There will be an allowance to the complainant of $300 for counsel fees, and provision will be made for the payment of the expenses of the suit as it progresses.