FLORINE N. WILSON *vs.* LEVI WILSON.

To a petition for divorce on account of extreme cruelty, condonation is a sufficient answer. But condonation is always on condition that the offence condoned be not repeated, and the condonation of cruelty is annulled by acts of wrong in themselves insufficient to justify divorce.

On a petition for divorce for cruelty, the proof showed that the petitioning wife had suffered abusive language, physical violence, loss of property extorted by threats, and venereal infection. She was living in her father's house, where she received the respondent as her husband, up to the day when she filed her petition, and after the commission of the acts on which it was founded.

*Held*, that her debility of mind and body, her fear for her children, and her medical igno-
rance were a sufficient explanation of her *laches*, and that the defence of condonation was
not made out.

PETITION FOR DIVORCE. The facts involved are stated in the opinion of the court.

*Rollin Mathewson, Ziba O. Slocum & Charles A. Wilson,* for petitioner.

*Walter B. Vincent & George J. West,* for respondent.

Condonation covers cruelty as well as adultery.

If the wife is living beyond the influence of her husband, as with her father or brother, the same circumstances which would show a condonation by him will show a like condonation by her.

There was nothing to prevent the petitioner from leaving the respondent the very day they went to her father's house.

The condonation was not conditional : there was no continuation of the alleged cruelty after the parties removed to Mr. Farnum's house.

The contagious disease had been communicated to the wife in 1885, according to her testimony.

According to the testimony of Mrs. Wilson herself, the offence of cruelty was fully developed and a divorce was determined upon previous to the period of continuous cohabitation at her father's house in December, 1886, and in January, 1887. See Bishop on Marriage and Divorce, 6th ed. §§ 49–51, and cases there cited.

*February* 4, 1888. DURFEE, C. J. We think the charge of extreme cruelty is abundantly proved. The petitioner married the respondent October 2, 1882 ; she filed her petition for divorce January 20, 1886 ; and the evidence shows that during the intervening period she suffered from him, in a greater or less degree, four different kinds of cruel treatment, to wit : vulgar, profane, and abusive language, often used to or concerning her in her presence when she was in very feeble health ; blows and other physical injuries inflicted on her ; the communication to her of a vile disease ; and the forcing her by threats and importunities to surrender to or for him her money, her jewels, and her household furniture ; so that, making all due allowance for exaggeration and misconception, we are entirely satisfied that she is entitled to a divorce unless she has lost her right to it by condonation.

There are cases which hold that when the charge is extreme cruelty, the defence of condonation is unavailable, but these cases are at variance with the main current of decision, and are in our opinion erroneous. Doubtless, however, the defence is more easily avoided when set up to such a charge than when set up to the charge of adultery. It is a virtue for a wife who is maltreated by her husband to bear with him so long as any hope remains that her patience may be rewarded by his amendment; and therefore her bearing with him has as much the character of probation as of condonation, and, regarded as condonation, it is such that the condonation may be easily forfeited by the husband by conduct showing that he still continues incorrigible: for it is well settled that a condonation is always subject to the condition that the offending party shall not repeat the offence; and also settled, when the offence is cruelty, that treatment much less cruel than would be necessary to be a good ground for divorce will suffice to avoid the defence of condonation.

The petitioner was living in her father's house when her petition was filed. She had been living there for several weeks, her husband living with her up to the morning of the day when it was filed. The acts of cruelty, which she chiefly relies upon for divorce, were committed while she was living with him elsewhere. The evidence shows, however, that ten days before the filing of the petition he gave way, without any real provocation, to a fit of violence toward and intemperate abuse of her, which, in our opinion, would have amounted to a forfeiture on his part of any previous condonation if she had then refused any longer to cohabit with him, as, being in her father's house, she might have done. She lived with him, receiving him as her husband, ten days longer, and, so far as appears, without receiving any further maltreatment from him. Ordinarily such conduct would be regarded as a condonation, and it must be so regarded here unless she can show some excuse for it. It is ordinarily the duty of a party, after making up his or her mind to apply for a divorce, to show his or her good faith by withdrawal from cohabitation. 2 Bishop on Marriage and Divorce, § 38; *Anonymous*, 6 Mass. 147.

She makes two excuses. One is, that she was so much enfeebled by sickness, and the sufferings which she had undergone, that she

dreaded to provoke her husband's anger by shutting the door upon him; and, in fact, was incapable of the effort which his exclusion would cost until it was absolutely necessary for her to make it. She is apparently a person of delicate organization, one who would naturally shrink from such a trial, and she was undoubtedly much debilitated in body and mind. The evidence shows, moreover, that she married without her father's approval, and, owing to some consequent estrangement, was thrown upon her husband, without the moral support of her family, and so acquired a habit of subjection to his domineering will; a habit which he had aggravated, if we can trust her testimony, by a practice which he had of terrorizing her for his own gratification. Add to this that she had reason to fear for her children, lest, if he were excluded before her petition was filed, he might attempt to gain possession of them. In the fit of passion which he gave way to ten days before the petition was filed, one of his threats was that he would leave her and take her children with him. In a matter like this a wife is much more indulgently considered than a husband, owing to her comparative helplessness, and it has been held that voluntary cohabitation, following acts of cruelty on the part of the husband, will not always operate as a condonation to defeat a petition for divorce. 2 Bishop on Marriage and Divorce, §§ 49–51.

The first excuse greatly palliates if it does not justify the petitioner's conduct.

The second excuse is, that, though the petitioner knew she had suffered cruel and injurious treatment from her husband, she did not know the extent of the injury. Her husband had syphilis, but nevertheless continued to cohabit with her, the consequence being that she had a syphilitic sore throat. He told her the name of the trouble, but, to exculpate himself, ascribed it to a false cause, namely, drinking from a cup which had been used by a person infected, and did not restrain himself. It is difficult to imagine a worse or more insidious form of cruelty. The petitioner testifies that she did not know the nature of the disease, notwithstanding he had named it, and, though there were things which might have opened her eyes, we are inclined to believe that it was not until the physicians, summoned at our request, had given their testimony, that she fully realized to what a shameful

and dangerous disorder he had exposed her. It is not to be supposed that a lady, bred up in family seclusion, has the same understanding of such matters as the average man. The respondent evidently did not think the petitioner had it. "In a case of this kind," it has been said, "the court ought to see its way very clearly to the fact of condonation before it comes to that conclusion." *Ellis* v. *Ellis and Smith*, 4 Swab. & T. 154, 157. When the defence is condonation, it is for the respondent to prove it; and of course, if the petitioner did not know what the offence was, she cannot be held to have condoned it; and we may add, that it is easier to believe that she did not know, because it is so difficult to believe that, if she had known, she either would or could have condoned it. Our conclusion is that the defence cannot avail.                                            *Petition granted.*