CATHERINE E. ADAMS *v.* PHILIP S. ADAMS.

November Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed January 9, 1930.

*James B. Campbell* for the libelee.

*Searles, Graves & Waterman* for the libelant.

SLACK, J. On the facts found the petitioner was granted a divorce for intolerable severity, and the case is here in the petitionee's exceptions.

The libel charges intolerable severity and desertion.

The material findings are these: The parties were married September 5, 1905, and cohabited with each other in this State until September, 1920. The petitioner has always faithfully kept the marriage covenant. They have four living children born respectfully on April 27, 1913, May 14, 1914, July 23, 1916, and May 25, 1918. On September 17, 1920, the petitionee was committed to the Vermont State Hospital at Waterbury, where he was confined continuously until October 31, 1922, when he escaped. He was insane when committed to said hospital, and remained so until the time of the hearing below. Some time previous to the date when petitionee became insane in 1920, he treated the petitioner with intolerable severity, in that he used physical violence, and profane and abusive language toward

her, which tended to cause her bodily harm. He wilfully deserted petitioner from October 31, 1922, to the time of the hearing herein (June Term, 1928). In November, 1923, he went to petitioner's home where he was met by her in "a pleasant manner," but he roughly pushed her aside, and said: "Get away from me, you damned b——." She was in poor health at the time, and as a result of his conduct collapsed in a nervous, distracted condition. After this incident, petitionee, without cause, refused and neglected to live with petitioner, or to provide for her and their children, and in fact deserted her. On December 16, 1922, the petitioner gave birth to a child which, as part of his defense, the petitionee claimed was illegitimate. It is further found that neither the desertion herein mentioned nor the petitionee's conduct in November, 1923, constitute grounds for a divorce, because petitionee was then insane, but that petitioner is entitled to a divorce because of his acts of cruelty and intolerable severity prior to 1920.

■ The first exception is to the exclusion of evidence respecting the sexual relations of the parties during the time the petitionee was confined in the State Hospital. The petitioner testified that petitionee was the father of the child born December 16, 1922, and that such child was begotten on an occasion when she was visiting petitionee in said hospital. The petitionee admitted that petitioner visited him several times while he was in the hospital, but offered to show by his own testimony that he did not have sexual intercourse with her during the year 1922, and also that he did not have the opportunity of so doing. Both lines of inquiry were excluded, subject to his exception. That this evidence was properly excluded if the common law rule obtained cannot be doubted. Jones on Evidence (3d ed.) par. 97; *Id.* (2d ed.) par. 339, and cases there collected.

Various reasons for this rule are given in the earlier cases. In 1777 Lord Mansfield in *Goodright D. Stevens* v. *Moss*, reported in 11 Eng. Rul. Cas. 578, declared that it was founded "in decency, morality and policy." The latter ground appears to be the more logical one; and is the one usually recognized in the recent cases. Why it should be considered more indecent for the husband to testify to non-intercourse with his wife than for him to testify to other facts concerning her infidelity, which he clearly may do, is not apparent; neither is it apparent why good morals require silence on his part respecting their sexual

relations while she is surrounding his board with the fruit of her immorality. It would seem that were he permitted to speak the truth, she might be more mindful of her chastity.

But, whatever the reasons for the rule may be, it is no longer in force in this State in divorce cases. G. L. 1894 provides in effect that a libelant and libelee may testify respecting *all matters* in such cases. The language of this statute is plain, and earlier legislation shows that it was used advisedly. By Act No. 77, Laws of 1876, both parties to divorce proceedings were made competent witnesses when the issue was intolerable severity or desertion. This provision was carried into the revision of 1880. See R. L. 1006. V. S. sections 1240 to 1243, inclusive, deal with the competency of husband and wife in certain cases, and the latter sections provide that both shall be competent witnesses in a proceeding by either for a divorce. In 1904, the Legislature by Act No. 60 provided: ''Husband and wife shall be competent witnesses for or against each other in all cases civil and criminal, except that neither shall be allowed to testify against the other as to any statement, conversation, letter or other communication made to the other or to another person; nor shall either be allowed in any case to testify as to any matter which in the opinion of the court would lead to a violation of marital confidence,'' and repealed all existing statutes inconsistent therewith. Whether the provision then in force respecting the competency of husband and wife in divorce cases was affected thereby is immaterial, since it seems certain that neither they nor the Act of 1904 were broad enough to remove the common-law disability. See *Chamberlain* v. *People,* 23 N. Y. 85, 80 A. D. 255; *Kennedy* v. *State,* 117 Ark. 113, 173 S. W. 842, L. R. A. 1916B, 1052, Ann. Cas. 1917A, 1029; *Liles* v. *State,* 117 Ark. 408, 174 S. W. 1196; *Estate of Mills,* 137 Cal. 298, 70 Pac. 91, 92 A. S. R. 175; Note, 2 L. R. A. (N. S.) 619.

But in 1906 the statute last quoted was amended by adding thereto the following: ''But nothing in this section shall be construed so as to prevent a libelant and libelee from testifying to all matters in divorce causes.'' P. S. 1592. Such has been the law to the present time. This is a much broader provision than is found in the cases above cited, or any that have come to our attention. Indeed, if the Legislature intended to abrogate the common-law rule, language more apt for that purpose could not have been used. That the Legislature had authority to de-

part from that rule is recognized in *Commonwealth* v. *Rosenblatt,* 219 Mass. 197, 106 N. E. 852, *Cuppy* v. *State,* 24 Ind. 389, *Mulligan* v. *Thompson,* 23 Ont. Rep. 54, and is not open to doubt.

With the wisdom of this change we have no concern; that was a matter for the Legislature to deal with; and it has done so in unmistakable language. As our statute now stands the offered evidence was admissible.

It should be borne in mind that this statue applies only to divorce cases where the legitimacy of the offspring is merely an incidental matter, and does not affect the common-law rule in cases where legitimacy of the offspring is the primary question involved.

The petitionee excepted to the finding that previous to the time when he became insane in 1920, he treated the petitioner with intolerable severity, etc., on the ground that such finding was not supported by the evidence. He also excepted to the finding that the acts of cruelty and intolerable severity prior to 1920 constituted ground for a divorce, on the grounds, in effect, that it was not supported by the evidence, and that any such acts of misconduct had been condoned. The questions raised by these two exceptions are such that they may properly be considered together.

In her opening case the petitioner appears to have relied upon the desertion of petitionee subsequent to the time he escaped from the hospital, since she offered no evidence, or but little, tending to show intolerable severity. After the petitionee had introduced evidence which made it improbable that a divorce could be had for desertion because of his mental condition ever after he was committed to the hospital (desertion before was not claimed), the petitioner testified to certain misconduct on his part which might entitle her to a divorce for intolerable severity had such misconduct not been condoned. The only misconduct of petitionee which the evidence tended to show affected the health of petitioner, or was likely to, was in 1914 or 1915. She testified that she then had a miscarriage which she thought was caused by petitionee's physical violence toward their eldest son. It did not appear when any of the other acts testified to by her, only one of which showed physical violence by petitionee, took place, whether before or after her

miscarriage, and nothing appeared from which a presumption respecting the time of their occurrence can be indulged.

That the parties continued marital cohabitation until petitionee became insane in 1920 is not denied. One, and very likely two, of the children first above mentioned must have been begotten subsequent to the incident in 1914 or 1915, and the petitioner testified that she was pregnant in 1920 when petitionee went to the hospital. More than this, she testified that she had voluntary sexual intercourse with petitionee several times while he was in the State Hospital, in fact every day when they were together, and that she visited him there six times and remained with him from one to four days on the different occasions.

While condonation, as is said in *Langdon* v. *Langdon*, 25 Vt. 678, 60 A. D. 296, has for its very basis and consideration the promise that the former injuries shall not be repeated, but that the forgiving party shall in the future be in all respects kindly treated and restored to conjugal rights, this does not require an express promise by the offending party. Such promise may and should be inferred from uninterrupted marital cohabitation, such as appears in the instant case down to the time petitionee was taken to the hospital, to say nothing of what occurred subsequently.

Condonation is ordinarily a question of fact, but when, as here, the evidence respecting it is undisputed, and comes from the lips of the party who seeks to avoid its effects, it is a question of law. As the evidence stands, the latter exception must be sustained on the ground that petitioner's misconduct, if any, had been condoned.

*Judgment reversed and petition dismissed.*

NOTE.—WATSON, C. J., sat at the hearing of this case, but by reason of his death did not take part in the decision.