CLYDE R. DAVIDSON v. WINONA C. DAVIDSON.

November Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 2, 1940.

70

*Conant & Parker* for libellant.

*Arthur L. Graves* and *Wm. S. Burrage* for libellee.

BUTTLES, J.   This is an action for divorce which is based upon the sole ground of alleged intolerable severity.   Following the trial findings of fact were filed by the court and thereafter judgment was rendered dismissing the libel and also awarding to the libellee her reasonable costs in excess of fifty dollars suit money theretofore paid by the libellant to the libellee.   Libellant comes to this court relying only on exceptions to the judgment order.   The libellee also filed a bill of exceptions and comes here relying on certain exceptions to the findings of fact.

The findings disclose that the parties lived together as husband and wife from the time of their marriage in 1927 until July 12, 1938, and during that entire period had regular sexual relations, the last intercourse taking place at about four o'clock in the morning of the last named date.   On July 11, 1938, the libellant had informed the libellee that she would have to choose him instead of her family, and that if she did not do so within twenty-four hours either the libellant or the libellee would have to leave the home.   In the evening of July 12th, no arrangement of this matter having been made, the libellant left the house which he and his wife had theretofore occupied and he did not thereafter live with her.

The conduct of the libellee which the court finds constituted intolerable severity was comprised of a large number of acts between 1928 and July, 1938.   It is found that the libellee engaged in and persisted in a course of conduct which annoyed and bothered the libellant and caused him mental, emotional and nervous distress and grief.   There was no finding of any act by

the libellee in the nature of intolerable severity subsequent to the last act of marital intercourse above referred to.

■ The questions raised by the libellant's exceptions to the judgment order dismissing the libel may be answered by determining whether the libellant's action is barred by condonation of the acts of the libellee which it is found constituted intolerable severity. The court found that prior to the fall of 1936 the acts of intolerable severity on the part of the libellee were condoned by the libellant through the continuance of marital cohabitation. But condonation is always conditional and has for its very basis and consideration the promise, express or implied, that the forgiving party shall, in the future, be, in all respects, treated kindly and restored to conjugal rights. *Adams* v. *Adams,* 102 Vt. 318, 323, 148 Atl. 287; *Langdon* v. *Langdon,* 25 Vt. 678, 679, 60 Am. Dec. 296. The last acts in the course of conduct which the court found constituted intolerable severity occurred early in July, 1938. That the libellee's acts at that time violated the promise given with any prior condonation and were sufficient to cancel the same cannot be doubted. It follows that we have for consideration only such condonation as may have occurred subsequent to those acts.

From the fall of 1936 to July 12, 1938, the court found no forgiveness or condonation by the libellant of libellee's conduct, except such as is to be inferred or implied as a matter of law from a desire to keep the home together for the benefit of the family and especially the children, and except such as is to be inferred or implied as a matter of law from the regular sexual relations above referred to, terminating on the morning of July 12, 1938.

■ It is not made to appear that the libellant, subsequent to early July, 1938, was actuated by any desire to keep the home together for the benefit of the family and children. In fact the absence of such a desire might be inferred from the ultimatum given by the libellant to the libellee on July 11th. However that may be, we think that condonation cannot be inferred or implied as a matter of law merely from a desire to keep the home together for the benefit of the family and especially the children. *Greenwell* v. *Greenwell,* (R. I.) 98 Atl. 53, 54; *Wilson* v. *Wilson,* 16 R. I. 122, 13 Atl. 102, 104.

■■ The findings do not definitely indicate that more than

one act of marital intimacy took place between the parties between "early in July" and the morning of July 12th. We therefore confine our inquiry to the question whether from the act of intercourse on the morning of July 12 condonation is to be inferred or implied as a matter of law. The finding with respect to this act is that it was voluntary on the part of both libellant and libellee. The initiative came from the libellee and the matter was actively pursued by her until the libellant, though mentally reluctant, complied. Fraud in procuring the claimed condonation cannot be inferred from this finding, and the court does not elsewhere find that there was such fraud. In the absence of such a finding it will be presumed that there was no fraud in such procurement. *Marshall* v. *Marshall,* 65 Vt. 238, 240, 26 Atl. 900. Duress or compulsion of any kind is excluded by the finding that the act was voluntary on the part of both the libellant and the libellee. ·

It is well established in Vermont that intolerable severity, like other causes for divorce, is condoned by and the necessary promise of kindly treatment is inferred from uninterrupted or subsequent voluntary marital cohabitation. *Adams* v. *Adams,* 102 Vt. 318, 323, 148 Atl. 287; *Marshall* v. *Marshall,* 65 Vt. 238, 240, 26 Atl. 900; *Souther* v. *Souther,* 103 Vt. 48, 52, 151 Atl. 504; *Langdon* v. *Langdon,* 25 Vt. 678, 679, 60 Am. Dec. 296.

The libellant contends that there could be no condonation as a matter of law in this case because the intolerable severity which was here found consisted of a large number of acts which formed a persistent course of conduct. But it is significant that the final act of intimacy occurred later than any acts constituting intolerable severity, and after the libellant had formed and announced the intention of separating from the libellee on the following day if she did not make the choice he had requested. For this reason many of the cases cited by the libellant from other jurisdictions are not in point. The libellant then had full knowledge of all the acts of the libellee upon which he relies in this action. He had endured those acts up to the point where it is found that they constituted intolerable severity under our law and it does not appear that he could hope to strengthen the proof which would be required by further cohabitation with the libellee. We perceive no reason which required the libellant to

indulge in acts of marital intimacy during the twenty-four hours in which the libellee was required to make the choice demanded.

The case of *Ryder* v. *Ryder*, 66 Vt. 158, 28 Atl. 1029, 44 Am. St. Rep. 333, does not support the libellant's contention that the persistent course of conduct in which the libellee here engaged was continuous and therefore could not be condoned. The Ryder case was a petition for annulment of marriage in which the petitionee was infected with chronic and incurable syphilis. The court there said that there could be no condonation of such a cause. It existed continuously. It is apparent that a series of acts, even though occurring at frequent intervals, are not continuous in the sense in which infection with disease is continuous. Furthermore the disease being incurable was bound to continue in the future, and the promise necessary for condonation could not be made, or at least such a promise if made would be worthless.

Was the cause for divorce which here existed condoned, as a matter of law, by the final act of marital intimacy? On this question there is great divergence of authority. It is said in 19 C. J. 87, sec. 201: "A single voluntary act of sexual intercourse by the innocent spouse after discovery of the offense is ordinarily sufficient to constitute condonation, especially as against the husband." In many of the cases cited to this proposition the offense which was so condoned was adultery, but this rule was applied in *Phinizy* v. *Phinizy*, 154 Ga. 199, 216, 114 S. E. 185, 193, where the offense condoned was cruel treatment and it is said: "Sexual intercourse is not a necessary element of condonation. Where it occurs it is conclusive evidence of condonation." This is followed by a statement of the rule as above quoted from Corpus Juris.

In *Shirey* v. *Shirey*, 87 Ark. 175, 181, 112 S. W. 369, it was held that a single voluntary act of sexual intercourse by the innocent spouse, after separation on account of cruel conduct constituting grounds for divorce, operates as a condonation of the cruelty.

In *Drew* v. *Drew*, 250 Mass. 41, 144 N. E. 763, 764, which was a case of alleged cruelty, the court said: "A single act of intercourse between the libelant and libelee is not necessarily condonation of previously existing grounds of divorce. * * * It cannot be said as matter of law that under the conditions which

might have been found, that act in the case at bar did not have that effect.''

*Beebe* v. *Beebe*, 174 App. Div. 408, 160 N. Y. Supp. 967, was an action for separation. It appeared that the plaintiff, returning from the west, occupied the same bed with the defendant for one night and it was held that this cohabitation condoned previous cruel treatment by the defendant. It is true that in many cases from other jurisdictions it seems to be held that one act of marital intercourse does not result in condonation. In some of these cases the circumstances indicate that the intercourse was not voluntary, others were decided in jurisdictions where the matter of condonation is regulated by statute, and in others it appears to be the law that adultery will be more readily condoned than cruelty, or at least that evidence tending to show condonation is more readily accepted as conclusive in the one case than in the other.

██ ██ Sexual intercourse, under the circumstances here disclosed, constitutes condonation. *Adams* v. *Adams, supra.* We hold that under these circumstances one such act of intercourse is sufficient to bring about that result. We are impelled to that conclusion in part by considerations of public policy. The law undoubtedly favors the marriage relation and its continuance. *Rogers* v. *Rogers*, 67 N. J. Eq. 534, 58 Atl. 822, 824. The law presumes against vice and immorality and in favor of marriage. *Northrup* v. *Knowles*, 52 Conn. 522, 2 Atl. 395, 396, 52 Am. Rep. 613. The act of intercourse of July 12, 1938, if not had in pursuance of an intention of continuing the marriage relation takes on a meretricious character against which the law presumes.

██ ██ No exceptions were briefed by the libellant to the findings of fact upon which our conclusion is based and they therefore stand, as to him, as undisputed facts warranting that conclusion as a matter of law. *Adams* v. *Adams*, 102 Vt. 318, 323, 148 Atl. 287. We hold that condonation is to be inferred as a matter of law from the intercourse of July 12, 1938.

The libellant's exception to that portion of the judgment order which adjudged that the libellee recover from the libellant her reasonable costs in this action in excess of $50 suit money previously paid, said costs to be taxed and computed by the clerk, must be sustained.

██ It is only by force of our statutes that costs are ever

taxed and allowed. *In re Jacobs*, 87 Vt. 454, 89 Atl. 634; *Munger* v. *Verder*, 59 Vt. 386, 388, 8 Atl. 154; *Tyler* v. *Frost & Co.*, 48 Vt. 486. Our attention is not called to any provision of the statute, and we know of none, that permits the allowance of reasonable costs to one of the parties to a divorce action. P. L. 3142 provides in substance that in such action the court in which the cause is pending or a superior judge may, on notice to the adverse party, make such order in regard to temporary alimony and funds to maintain the litigation during the pendency of the libel as is just. It appears that upon application made under this section suit money in the sum of $50 had been paid by the libellant to the libellee by agreement and that the payment of the further sum of $187 for counsel fees had been ordered by the court. If it was intended merely to increase the funds previously allowed to maintain the litigation the judgment order is not aptly worded to accomplish that purpose. Moreover this part of the order is erroneous because its effect would be to leave to the clerk the determination of the amount of such increased allowance of suit money instead of its being fixed by the court or the judge as the statute directs. The court was without jurisdiction to render this portion of the judgment and it should be eliminated therefrom. The disposition made of the libellant's exceptions makes it unnecessary to consider the libellee's exceptions to the findings of fact.

*Judgment that the libel be and is dismissed, affirmed. Judgment that the libellee recover from the libellant her reasonable costs in excess of $50.00 suit money heretofore paid said libellee by the said libellant, said costs to be taxed and computed by the clerk of the court, reversed.*