ROBERT J. MONAHAN vs. JUNE H. MONAHAN.

Cumberland.     Opinion, April 18, 1946.

*Francis W. Sullivan and Clifford E. McGlauflin,* for libellant.

*Walter M. Tapley, Jr. and Armand O. LeBlanc,* for the libelee.

SITTING: THAXTER, HUDSON, MANSER, MURCHIE, TOMPKINS, JJ.

TOMPKINS, J.   On exceptions. Libel for divorce heard by the presiding justice without the assistance of a jury. The libel alleged adultery of the libellee and cruel and abusive treatment of the libellant by the libellee, and was dated May 12, 1945.

At the hearing evidence was introduced by the libellant, but none was offered by the libellee, although she was present in court and represented by counsel. The libellant relied principally upon his allegations of the adultery of the libellee, which if proved is a ground for divorce in Maine. Without objection admissions as to the adultery of the libellee made by her to Christina Campbell were offered by the libellant and admitted by the presiding justice. Also offered by the libellant and admitted by the presiding justice, without objection, was an attested copy of the birth

certificate of a child born to the libelee on March 29, 1945, which certificate did not give the name of the father.

The evidence introduced by the libellant to sustain his allegations of adultery was the testimony of Dr. Thor Miller, who attended the libelee during her confinement at the hospital on the 29th day of March 1945, when she gave birth to a baby whose name was given in the recorded certificate as Peter David Monahan.

"Q. Did you ask her who the father of the baby was?
"A. No.
"Q. Did she tell you who it was not?
"A. Yes.
"Q. Who did she say it was not?
"A. Well she said Mr. Monahan was not the father."

Later on cross-examination in reply to

"Q. Well, Doctor, the information that you did get relative to the father of this child, was it from Mrs. Monahan or was it given you by the attendant at the hospital?
"A. Neither one.
"Q. Well where did you get your information?
"A. On the birth certificate.
"Q. Birth certificate had not been prepared by you?
"A. No.
"Q. It had been prepared by the hospital authorities?
"A. That is right."

The testimony of Dr. Thor Miller with relation to the certificate was merely hearsay evidence and is disregarded in the consideration of this case.

Christina Campbell testified in answer to the following questions:

"Q. Are you employed at the Maine Eye and Ear Infirmary?
"A. I am.
"Q. Were you there last March?

"A. I was.

"Q. In what capacity?

"A. I am the record clerk.

"Q. Did you interview Mrs. Monahan as a patient at the hospital?

"A. I did. I did. Her name was Sillinger when she entered the hospital.

"Q. You interviewed her as to the parentage of the child?

"A. I did.

"Q. What name did she give you for the father?

"A. Charles Sillinger.

\*   \*   \*   \*   \*   \*   \*

"Q. Using that information you made out the first certificate?

"A. I did.

"Q. That is not the certificate that was ultimately recorded?

"A. That is not. I believe there were others made too."

She further testified on direct examination:

"Q. Mrs. Campbell, the lady you talked to is the lady — and who said she was Mrs. Sillinger, is the lady concerning whom you made out the birth certificate?

"A. I made one on the Sillinger child and I made another out on Hawkes.

"Q. That is the Hawkes one?

"A. Yes, June Hawkes."

The certificate of birth certified to by the city clerk of the City of Portland gave the name of the child Peter David Monahan. Date of birth March 29, 1945. Name of father not given. Maiden name of mother June Arlene Hawkes (Monahan) mrg. name.

From the testimony of Christina Campbell it therefore appears that there were at least two certificates of birth made out

by her, one giving the name of the father as Sillinger, and one without giving the name of the father, which last certificate was recorded in the city clerk's office at Portland, Maine.

At the end of the hearing a decree denying the divorce sought was entered by the presiding justice. The presiding justice ruled that the evidence of adultery of the libellee offered by the libellant and admitted by the presiding justice at the hearing, without objection, could not be considered by him as proving the adultery of the libelee, because the primary source of the evidence was admissions made by the libellee. The presiding justice ruled that the evidence of adultery of the libellee offered by the libellant at the hearing and without objection by the libellee admitted by the presiding justice was incompetent to prove the adultery of the libellee. To which ruling the libellant, Robert J. Monahan, excepted.

The State having a most important interest in the marriage relation is a party to the divorce proceeding just as much as the parties themselves and, not like other contracts, the contract of marriage cannot be dissolved by the mere consent and agreement of the parties, and in an action for divorce the admissions of the parties are closely scrutinized. The court must be satisfied that an attempt is not being made to destroy the marriage relation falsely, or through collusion. In the absence of statutory provisions to the contrary the admissons of the defendant would be competent to prove adultery on her part when it appears that the admissions have not been obtained by connivance, fraud, coercion, collusion or other improper means. *Burk* v. *Burk*, 44 Kan., 307, reported in 24 P.; 466; *Miller* v. *Miller*, 2 N. J., Equity 139; *Warren* v. *Warren*, 41 Times Law Report (English), 599, Probate Div. 1925, page 107, cited 60 A. L. R., 383; *Wallace* v. *Wallace*, 114 N. W., at 531; *Billings* v. *Billings*, 11 Pick., 461; *Dillen* v. *Dillen*, 281 Mass., 423; *Vance* v. *Vance*, 8 Me., 132.

In the case under consideration the admissions were made, not to the libellant but to a third person. Letters written to a third person, or to the libellant, by the libellee, admitting the

adultery are admissible, as well as verbal admissions. *Alta* v. *Alta*, 121 A., 301; *Bancroft* v. *Bancroft*, 85 A., 561 at 566; *Lenning* v. *Lenning*, 52 N. E., 46; 176 Ill., 180; *Warren* v. *Warren*, supra; *Purinton* v. *Purinton*, 101 Me., 250.

Defendant's counsel contends that the testimony of Christina Campbell as to the admission by the libellee is not admissible and should not be considered, because it tends to bastardize the child. In *Goodright ex dem. Stevens* v. *Moss*, Cowp., 591, the rule has been laid down and generally adopted, that neither spouse may give any evidence to prove nonintercourse by the husband if the result be to bastardize issue born after marriage. *Hubert* v. *Cloutier*, 135 Me., 230.

What the libellant sought to prove in this present case was adultery. The alleged admissions made to a third party that the husband was not the father of the child but the man she named, cannot bastardize the child for, as previously stated, it is well settled that the declarations of husband or wife are inadmissible to show (in the absence of a statute) that children born after marriage are illegitimate. Adultery and illegitimacy are distinct. Adultery alone was the issue in this case. Proof of the wife's adultery while cohabiting with her husband cannot overcome the presumption of legitimacy of their offspring. *Koffman* v. *Koffman*, 193 Mass., 593; *Grant* v. *Mitchell*, 83 Me., 23; *Parker et al.* v. *Parker*, 137 Me., 80; *Hubert* v. *Cloutier*, 135 Me., 230; *People* v. *Case*, 137 N. W., 55; *Rabeke* v. *Baer*, 115 Mich., 328.

The legitimacy of the offspring was only an incidental matter in this case and does not affect the rule in cases where the legitimacy of the offspring is the primary question involved. *Adams* v. *Adams*, 148 Atl., 287; 102 Vt., 318; *Koffman* v. *Koffman*, supra; *Warren* v. *Warren*, supra.

It does not appear that there is anything in the evidence submitted from which it could be inferred that the admissions were obtained by connivance, fraud, coercion or collusion, or other improper means. The suit was adverse in character and the admissions had probative value and should be considered, with

other evidence in the case, and given the evidentiary weight to which they are entitled, bearing upon the infidelity of the libellee.

*Exceptions sustained.*