### Rebecca A. Strong v. Rollin M. Strong

[185 A.2d 924]

September Term, 1962

Present: **Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed November 7, 1962

*Latham & Eastman* for the libellant.

*Joseph S. Wool* for the libellee.

**Smith, J.** This is a divorce action. The grounds alleged are intolerable severity. The libellant had a decree for divorce on the ground stated and the case is here on notice of appeal by the libellee.

■ The first exception briefed by the libellee to the findings of fact made by the court below is that the facts found, upon which the decree is based, were from the uncorroborated testimony of the libellant. This was a contested action in which the only witnesses as to the acts and circumstances which the libellant claimed constituted intolerable severity were the parties themselves. The testimony thus given was entirely contradictory, and made it abundantly clear that there was an utter lack of collusion between the parties. In such a situation it is our law that the trial court may properly find facts from the uncorroborated testimony of the libellant. *Castle* v. *Castle,* 118 Vt. 112, 113, 100 A.2d 574. The reason for the rule is evident, for it is common knowledge that a large share of domestic discord occurs only between the marital partners when they are alone and away from the presence of others. Corroboration of the conduct of the parties. at such times is an obvious impossibility, and the establishment of a rule requiring it would result in the denial of relief in cases that were otherwise meritorious.

■ Libellee has also excepted to finding of fact 13, in which the lower court stated that the conduct of the libellee as a witness was "sufficient corroboration to satisfy the Court." This finding, in the light of the rule just stated that no corroboration is necessary to corroborate the testimony of the libellant where there is no collusion between the parties, becomes mere surplusage and an immaterial finding of fact, and we need not consider it. *University of Vermont* v. *Wilbur's Estate,* 105 Vt. 147, 174, 163 Atl. 572.

The libellee's next assertions of error are that the facts found do not make out a case of intolerable severity and that facts found, upon which the lower court based its finding of intolerable severity, were in error.

The lower court found from the testimony of the libellant that the libellee had admitted to the libellant various instances of his unfaith-

ful conduct with other women during the period of their marriage. She also testified that she found contraceptive material in the automobiles that he used, and stated that at one time he expressed to her fear of having contracted a venereal disease. It was also her testimony that he had threatened her frequently and stated he would take the children of the couple with him if she instituted divorce proceedings. All this, the libellant testified, caused her to lose weight, to become nervous and unable to sleep and suffer humiliation and embarrassment.

Finding No. 4, excepted to by the libellee, states: "The parties have had trouble periodically since 1954 caused by the libellee's absence from home nights, returning often in the early morning hours; excessive use of intoxicants; absence or lateness for his evening meal; refusal to account to the libellant of his whereabouts and his apparent lack of interest in the home and family."

A search of the transcript fails to disclose any evidence of the excessive use of intoxicants on the part of the libellee. In fact, no testimony of any nature on any use of intoxicants on his part appears on the record.

Finding No. 11, excepted to by the libellee, states: "Libellee threatened to take the children away from libellant if she instituted divorce proceedings or accused him of unfaithfulness in any court proceedings; she became afraid of him."

While the transcript disclosed evidence of the threat mentioned in the above finding by the lower court, nothing appears in the record before us in which the libellant expressed herself as being fearful because of such threats.

■ These are both findings by the lower court which were without evidence to support them. They are material findings because they were among the facts considered by the lower court in determining that the libellee had treated the libellant with the intolerable severity that the court found was injurious to her health. It is, of course, impossible for us to determine the weight given to such unsupported facts by the lower court in reaching its determination on the matter of intolerable severity. It might be that the lower court would have reached the same conclusion on the issue of intolerable severity in the absence of these unevidenced findings of fact. But their inclusion in the record shows that they did enter into the consideration of the

lower court and such consideration of facts without evidence to support them may have worked an injustice upon the libellee. Such inclusion in the findings of fact constituted prejudicial error on the part of the lower court.

The libellee also objected to the lower court's refusal to find that the libellant had condoned the misconduct of the appellee, although a request to so find was made.

The record before us discloses that the admissions of misconduct with other women, the finding of the contraceptive material in the car and the various threats to the libellant from the libellee occurred during the years from 1954 to 1956 or 1957, except for the libellee striking the libellant in 1960. The parties lived together as husband and wife, sharing the same bed until Christmas time in 1959, with a separation occurring in February 1960. During this period, two children were born to them, in 1956 and in 1957. They worked together building a new home in 1956 and 1957. Libellant testified that during the period from 1956 until Christmas time 1959, the relationship between the parties was "normal and good."

No. 14 of the findings of fact is: "The Court is mindful that libellee's conduct as found herein persisted over a period of time and that the parties lived together all during this same period. However, we are unable to find as urged by the libellee that libellant condoned this conduct by remaining with the libellee."

The statement of the lower court that "we are unable to find" does not necessarily mean that there was no evidence tending to show condonation, but it does mean that such evidence, in the court's judgment, does not preponderate, and so in a legal sense it was "unable" to make such a finding. *McClary* v. *Hubbard*, 97 Vt. 222, 238, 122 Atl. 469.

The evidence here is undisputed that the parties lived together from 1956 until 1959 in a "normal and good" manner. Two children were born to them during this period, and they engaged in sexual relations until the last of 1959 or the early part of 1960. That such conduct between the parties was a condonation by the libellant as to the conduct of the libellee during the years prior to 1956, and for the years 1956 until the last part of 1959 is clear under our cases.

"It is well established in Vermont that intolerable severity, like other causes for divorce, is condoned by and the necessary promise

of kindly treatment is inferred from uninterrupted or subsequent voluntary marital cohabitation." *Davidson* v. *Davidson,* 111 Vt. 68, 72, 10 A.2d 197, and cases cited thereunder.

"Condonation is ordinarily a question of fact, but when, as here, the evidence respecting it is undisputed, and comes from the lips of the party who seeks to avoid its effects, it is a question of law." *Adams* v. *Adams,* 102 Vt. 318, 323, 148 Atl. 287.

■ There can be no doubt as a matter of law that in the instant case the libellant had condoned the former injuries received by her from the libellee up and until the time of whatever injuries, mental or physical, if any, she may have received from the libellee at or about New Year's Day, 1960.

"However, condonation is a doctrine of conditional forgiveness. Marital relations accomplished the forgiveness, but with the continuance of the marriage the obligation is then on the forgiven partner to desist from the misconduct. Failure to fulfill the condition of condonation renders it inoperative and nullifies its legal effect." *Padova* v. *Padova,* 123 Vt. 125, 183 A.2d 227.

■ The situation presented is an undoubted condonation by the libellant of former injuries received from the libellee, but with a possible failure on the part of the libellee to fulfill the conditions of the condonation at a subsequent time which would result in the condonation being inoperative and nullified. *Crossman* v. *Crossman,* 115 Vt. 219, 221, 55 A.2d 330.

Because in No. 14 of the findings the lower court was unable to find by a preponderance of evidence that condonation had even been extended by the libellant to the libellee, which was in error, it followed that no finding of fact was made as to whether the libellee had broken the conditions of the condonation so as to negate it by his conduct in 1959 and 1960.

The various findings of fact by the lower court relative to the marital misconduct of the libellee do not refer to any specific dates upon which the alleged offenses were committed. This Court is unable to determine from the findings if there was conduct on the part of the libellee during the period of time in which the parties lived together as husband and wife, after condonation, which would result in the condonation becoming inoperative.

The absence of these essential findings of fact relative to the presence or absence of condonation at the time that the parties separated in early 1960, plus the consideration by the lower court of findings of fact without evidentiary support in its decretal finding of intolerable severity, requires a reversal of the decree below, and a remand for a factual determination by the lower court of the questions presented.

*Reversed and remanded.*