**Marion E. Siebert v. Frank T. Siebert, Jr.**

[ 200 A.2d 258 ]

February Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed April 14, 1964

*A. Luke Crispe* and *John A. Lowery* for the libellant.

*Robert Grussing III* for the libellee.

**Sylvester, J.** This is a contested divorce action heard by Superior Judge Divoll, specially assigned, sitting alone by consent of the parties. The case was heard on libellant's libel and libellee's cross-libel. Findings of fact were duly made, filed, and a decretal order issued March 21, 1963, granting the libellant, Marion E. Siebert, a divorce upon the grounds of intolerable severity. Libellee's cross-libel was dismissed. The libellant was granted custody of the two minor children of the parties, and the libellee was ordered to make weekly payments for their support. Libellant was awarded alimony and counsel fees. The decree also contained extensive and comprehensive provisions concerning the disposition of the property of the parties, payment of certain insurance premiums, and the creation of a trust fund for the advanced education of the two minor children.

The case is here on libellee's notice of appeal. He contends that certain findings are unsupported by evidence; that the trial judge drew upon his personal knowledge of the parties in making them; that the findings fail to reveal any misconduct on his part amounting to intolerable severity; and that the court by certain of its findings, especially Nos. 4 and 17, is in effect saying that the difficulties experienced by the parties resulted from a basic difference in their background training and philosophies, rather than any misconduct on his part constituting intolerable severity. He says the court chose to ignore the conflicting testimony as it related to the parties' conduct, which could have afforded a basis for finding intolerable severity and, in effect, granted the libellant a divorce on the grounds of incompatibility.

Further, the libellee contends the decree is not supported by the findings of fact; that the findings of fact upon which the court based its ultimate finding of intolerable severity are not supported by the evidence. He excepted to the court's order concerning the division of property of the parties, payment of certain sums as alimony and counsel fees, as well as for the support and education of the minor children. He urges that the decretal order be set aside and the libel be dismissed, or, in the alternative, that the decree be reversed and the case be remanded for a new trial.

The parties were married November 24, 1956, at Pittsburgh, Pennsylvania. At the time of marriage the libellant was about 30 years old, the libellee 42. Following their marriage they took up residence in Bellows Falls, Vermont, and were residing there at the

time the case was heard on September 18 and 19, 1962. Two children were born of the parties, the first in April 1958, the second in July 1961. The parties separated in January 1959, following a period of marital discord. They became reconciled and resumed living together in July 1960 and continued living together until the final separation in April 1962.

The libellee maintains that the trial judge went to considerable length in describing the backgrounds, philosophies, and nature of the parties in his findings, and that these findings dealing with the natures and philosophies of the parties are unsupported by the evidence and based entirely upon the acquaintance with and personal knowledge of the parties. An examination of findings Nos. 4, 5, 6, 7, 9, 15, and 17, lends support to this claim.

We think the court invited trouble when it "found" in paragraph number 4 the following: "The difficulties between these parties arose so apparently as a result of their respective personalities that a rather detailed description of each is necessary." First away, it should be obvious that to "find" a "detailed description" of the parties to the extent of the court's findings here, on this subject, would entail a personal acquaintance with the parties, such as the court subsequently found he possessed in finding number 5.

We now turn to and quote the findings, or portions thereof, that libellee challenges and claims are unsupported by evidence, and which he contends are based upon the personal knowledge of the trial court.

"5. Both of the parties are accepted prominent persons in the community of Bellows Falls in which they live and as such are both personally and socially known to the Presiding Judge. Any descriptions of them and their personalities and philosophies are given without prejudice and without any thought of derogation but simply as to the court's views of the reasons leading up to the bringing of this libel.

"6. The libellant, Marion E. Siebert, is an attractive and charming woman, 36 years of age, extremely careful in her appearance both as to style and cleanliness. She dresses stylishly, modishly and tastefully and created a very favorable impression. She originated in a middle class family of moderate means in and around Pittsburgh, Penn. area . . . From the evidence the court finds that her family were rather easy going financially and enjoyed

spending the money they had for the privileges of living at least up to their income if not in excess of it. While Mrs. Siebert is an attractive woman her interests are rather limited and are confined almost solely to her house, her family and her friends with no apparent deep-seated interest in any hobby, study or profession or even to the matter of reading current events and the troubles and problems of the world today. Financially her thinking is to enjoy the money that is available and to enjoy it to the utmost without squandering it. This thinking would be that she should have a nice home, that it should be well appointed, that the furnishings should be suitable to her position in the community, that her clothing should be stylish, serviceable and a credit to her and her appearance as she wore it and that her children should be brought up clean and neat with proper clothing, education and benefits as would befit their financial position. If there was a necessity for frugality and conservation she would adapt to that necessity. If there was no necessity for it she would live gracefully as the income indicated.

"7. . . . From the evidence and from the court's personal knowledge he (libellee) is an outstanding pathologist, probably one of the most outstanding in the New England States. He has the highest reputation among the medical profession as a pathologist. Personally, he is a tall, rather cadaverous looking person who is completely immersed in his own thoughts as he follows his everyday life. He is so immersed in his own thoughts that he completely ignores the thinking and abilities of other persons with whom he is in contact, not from any malicious design but from the fact that his mind is working at a different level and on a deeper plane than those with whom he usually has contact. . . . He was brought up in a most strict and frugal manner. . . . This frugality has so impregnated his character that he cannot depart from it no matter what his financial circumstances are. Further he cannot realize that there are other persons who do not have the same feelings of frugality and he is absolutely unforgiving of any person who does not agree with him as to the way money should be spent and/or saved. . . ."

"9. Dr. Siebert has a philosophy of life as shown by his testimony that is absolutely inflexible and unforgiving and anyone who disagrees with this philosophy is in error."

"15. Dr. Siebert also has made an extensive study of the Indian language and is an authority on that subject though it is as yet not income producing."

"17. It can be seen from the previous findings that it would be impossible for these two people with their divers natures to live together without friction, one a happy, charming Vera Vague and the other a brilliant, intellectual Scrooge. Almost from the beginning little frictions over money matters arose, even on the honeymoon, Dr. Siebert being very proud of the willingness with which he spent as much money as they did on their honeymoon and Mrs. Siebert taking it as a matter of course that these sums should be spent. These small frictions caused by having no common ground as to finances and intellectual interests occurred repeatedly during the first few years of the marriage and increased with time."

The record, as we find it to be upon examination, is entirely barren of evidence to support the findings above quoted. It is apparent, as claimed by the libellee, that the court in preparing these findings drew upon his personal knowledge of the parties as a basis for these findings, rather than evidence introduced at the hearing. The subject of these unsupported findings is not proper matter for judicial notice.

For a court, or a trier of facts, to base a finding on personal knowledge obtained as an observer outside of court, or from a place other than the witness stand, is improper and prejudicial. As stated in the case of *State* v. *Martel,* 122 Vt. 491, 493, 177 A.2d 236, "It is plainly accepted that a judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer outside of court." See, 31 C.J.S. Evidence §11, page 832; *Castello* v. *Cassidy,* N.Y. 1960, 216 N.Y. S.2d 46, 47; *Bervid* v. *Iowa State Tax Commission,* 247 Iowa 1333, 78 N.W.2d. 812; *Petition of Manuel Duarte* 331 Mass. 747, 122 N.E.2d. 890.

In the case of *Miranne* v. *State Farm Mutual Auto. Ins. Co.,* La. App., 54 S.2d 538, the lower court was reversed when it took judicial notice that a certain street was one of heavy vehicular traffic. The court there stated that judicial knowledge is limited to what a judge may properly know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact, not generally known, the basis of his action.

In *Kovacs* v. *Szentis,* 130 Conn. 229, 33 A.2d 124, a finding contained a recital of certain facts based upon the observation by the trial court of the defendant and the plaintiff's wife in the court room during the trial. In commenting on this procedure, the appellate court stated : "In effect the trial court, as a basis for these findings, made of himself a witness, and in making them availed himself of his personal knowledge; he became an unsworn witness to material facts without the defendant having any opportunity to cross-examine, to offer countervailing evidence, or to know upon what evidence the decisions would be made."

To allow a judge to make a finding on his individual knowledge of disputed facts material to the case, not testified to by witnesses in court, or upon its own private opinion, would be most dangerous and unjust. It would deprive the losing party of the right of cross-examination, and the benefit of all tests of credibility which the law affords.

▮ It is the duty of a court in divorce cases, where the state is virtually a party with an interest in the maintenance of the marital relations, to conduct a trial with utmost fairness and decide the case as it is persuaded by the competent and believable evidence alone. If a court feels he would be unable to maintain a scrupulous detachment in the trial of a case, he should make this known at once, and withdraw from the case.

There was sufficient evidence, if believed by the trial judge, upon which to base a finding of intolerable severity; however such a finding could not be equivocal or diluted by a finding to the effect that, "the court finds the situation was about half way between their two stories."

▮ We are satisfied, as claimed by the libellee, that the trial judge based the findings quoted here on his personal observations of the parties and as stated by Justice Smith in *Strong* v. *Strong,* 123 Vt. 243, 245, 246, 185 A.2d 924, "It is, of course, impossible for us to determine the weight given to such unsupported facts by the lower court in reaching its determination on the matter of intolerable severity. It might be that the lower court would have reached the same conclusion on the issue of intolerable severity in the absence of these unevidenced findings of fact. But their inclusion in the record shows that they did enter into the consideration of the lower court and such

consideration of facts without evidence to support them may have worked an injustice upon the libellee."

It is impossible to reach a conclusion other than one that these unsupported findings constituted a material factor in the decision reached by the court granting the libellant a divorce on the grounds of intolerable severity. In this there was error.

Because the decree must be reversed it is not necessary for us to pass upon the remaining grounds briefed by the libellee.

*Reversed and remanded.*