### John and Mary Giorgetti v. City of Rutland

[572 A.2d 933]

No. 86-169

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed March 2, 1990

*Tracee A. Oakman* of *Abatiell and Abatiell,* Rutland, for Plaintiffs-Appellees.

*Henry C. Brislin,* City Attorney, and *Theodore F. Robare,* Law Clerk (On the Brief), Rutland, for Defendant-Appellant.

Peck, J. The City of Rutland appeals from a decision of the State Board of Appraisers reducing the listed value of taxpayers' property from $311,400 to $131,000. We affirm in part and reverse in part.

The subject parcel consists of about forty acres of primarily wooded land with a rolling topography. Running along the northern boundary of the property is a corridor of approximately 150 feet, which is a right-of-way in favor of the Central

Vermont Public Service Corporation. In 1978, taxpayers obtained an Act 250 permit to subdivide the property into fifty-seven lots, but no roads or utilities have been installed, and John Giorgetti testified that he believed he could not sell the subdivided lots until the requirements and conditions of the Act 250 permit had been met.[1]

The property was treated as a single unit until 1984, though the permit was obtained in 1978. In 1984, the city assessor treated the property as consisting of fifty-seven separate parcels and set the value at $311,400, representing an individual appraisal of each lot contained in the subdivision of the taxpayers' acreage. Taxpayers appealed to the Board of Civil Authority, which affirmed, and then to the Board.

The Board, using a per-acre rather than a per-lot formula,[2] considered evidence of comparable properties in the city: the Charter Hills land consisting of 47.6 acres and assessed at $74,600, and the Bomac land consisting of forty-four acres and assessed at $70,400. The Board determined that the proper per-*acre* value of the subject property, without consideration of the value of the Act 250 permits, should be $1,570 (almost exactly the per-acre value of the Charter Hills property), or a total of $62,800. The Board made the following finding regarding the value of the Act 250 permits:

> 10. This Board has estimated the value of the Act 250 permit per lot is $1,200.00. This estimate is based on its knowledge and testimony from previous developers in other hearings. This assumption has had to be made because both appellant and appellee did not have any evidence to estimate a value per lot for an Act 250 permit.

---

[1] Taxpayers introduced evidence that six lots had been sold, but that they did not meet Act 250 requirements and could not be improved.

[2] The chair of the Board, incorporating the language of a letter that she assumed to have represented state policy as of 1964, stated near the conclusion of the hearing:

> We see no reason . . . to separate a single parcel into several entries in a grand list until they are actually sold to separate owners. The entry on the grand list is also of course separate from the question of value.

The addition of $1,200 per *lot* for the value of each Act 250 permit yielded an additional total of $68,400, for an aggregate value for the entire subject property of $131,200. The City appealed the Board's decision to this Court.

## I.

██ The City first contends that taxpayer did not overcome the presumption in favor of the validity of the municipality's appraisal, citing *Manganelli v. Town of Proctor*, 144 Vt. 451, 453, 479 A.2d 155, 156 (1984). In *Manganelli* the out-of-state taxpayer did not appear at the hearing, merely submitting a letter stating the basis of his grievance, and we concluded that the letter did "not satisfy plaintiff's burden of presenting evidence sufficient to overcome the presumption of the appraisal's validity." *Id.* at 453, 479 A.2d at 156. In the present case taxpayer John Giorgetti was present with counsel and testified. While he retained the burden of *proof* throughout the proceeding, *Rutland Country Club, Inc. v. City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981), he met his burden of *production* by presenting "'credible evidence' . . . 'fairly and reasonably' indicating that the property was assessed at more than the fair market value or that the listed value exceeded the percentage of fair market value applied generally to property within the community." *Id.* at 145, 436 A.2d at 736 (quoting *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 507, 367 A.2d 1363, 1369 (1976)). The record indicates clearly that John Giorgetti testified fully about his own property, as well as the Charter Hill and Bomac comparables, discussing not only their values but their characteristics.

The City concedes that relevant testimony was presented, but contends that it was presented by taxpayers' attorney, not by any sworn witness. Taxpayers' attorney did speak extensively at the hearing, following John Giorgetti's testimony. Though counsel for the City at one point noted, "I assumed the witness [John Giorgetti] was going to testify not Mr. Abatiell," the City did not object to the attorney's remarks to the Board, and therefore cannot now contend that beyond these remarks "there was no other evidence."

## II.

The City next mounts a three-pronged attack on the Board's findings, arguing first that it mixed "apples and oranges" by appraising taxpayer's land on a per-acre basis, but calculating the increase in value due to Act 250 permits on a per-lot basis. It argues that the Board was compelled to choose one or the other, but does not indicate *why* the Board was compelled to make such an election. The data that the Board had on valuation were on a per-acre basis, and it determined that the per-acre valuation should apply, in light of testimony that the property was not yet ready for sale on a per-lot basis under Act 250. The City has not suggested why this presumptively correct conclusion by an administrative agency should be overturned on appeal. See *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 571, 556 A.2d 64, 68 (1988); *Department of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294, 415 A.2d 216, 218 (1980); *Pantasote Co. v. City of Passaic*, 100 N.J. 408, 412, 495 A.2d 1308, 1310 (1985).

The information concerning the value of an Act 250 permit to a multiple-lot subdivision would necessarily tend to be presented on a per-lot basis. The Board then might have deducted from the estimated per-lot added value due to the Act 250 permits an amount to reflect that the value would only be added at some future date, or it might have received evidence of the value of other bulk land in the city benefited by Act 250 permits, but without the improvements necessary to allow sales. Instead, the Board used the full $1,200 per-lot figure, a step which could have hurt only the taxpayers, not the City.

The City contends that the Board ignored evidence presented by the city assessor of the sale of a single lot by taxpayers for $7,500, and that this sale should have guided the valuation of the entire subject property. The assessor did not introduce any evidence, however, that this single sale was a fair representation of the value of the whole property, and the Board was well within its power to base its valuation decision on other comparable properties in evidence. *Sondergeld*, 150 Vt. at 571, 556 A.2d at 68.

■ Nevertheless, the City is correct in arguing that the Board should not have relied on testimony from previous developers in other hearings in arriving at its $1,200 per-lot figure as the value of the Act 250 permits. See *Siebert v. Siebert*, 124 Vt. 187, 191, 200 A.2d 258, 261 (1964); *Bervid v. Iowa State Tax Commission*, 247 Iowa 1333, 1339, 78 N.W.2d 812, 816 (1956). The City correctly points out that the value of an Act 250 permit may vary from property to property, just as other factors affecting value will surely depend on particular properties and sales markets. Furthermore, the parties had no opportunity to hear the evidence or respond to it. Therefore, we remand the matter to the Board for consideration of proper evidence on this point.

## III.

The City argues that the Board shifted the burden of proof to it on the issue of whether the Act 250 permits were valid on the date of valuation. The City argues that a state permit is presumed to be valid, see *In re Johnston*, 145 Vt. 318, 322, 488 A.2d 750, 752 (1985) (decisions made within expertise of administrative agency are presumed to be valid), and therefore taxpayers had to overcome that presumption. *Johnston* would be relevant if a party were challenging the validity of state-issued permits. The present case concerns the value that the Act 250 permits might have added to the subject property, not the presumption of the validity of a state-issued permit. Moreover, because the Board ultimately treated the permits as fully valid, the City was not prejudiced.

■■ The City also argues that the Board should have indicated in its findings and conclusions the results of its visit to the subject property pursuant to 32 V.S.A. § 4467. Nothing in that section requires the Board to make particular findings as a result of its visit, although the visit itself is required. 32 V.S.A. § 4467. It is unclear from the record whether the Board visited the subject property, as required. However, the appellant bears the burden of showing that the Board failed to comply with the statute. We remand for a determination of the additional value

to be assigned to the Act 250 permits, and to comply fully with the mandate of 32 V.S.A. § 4467.

*The decision of the Board of Appraisers is affirmed as to the initial valuation of the subject property, and the matter is remanded for proceedings consistent with this opinion.*