HENRY WILLIAM GUIBORD *v.* ELIZABETH McNALLY GUIBORD.

May Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 2, 1945.

*Sylvester & Ready* for the Libellee.

*P. C. Warner* for the Libellant.

BUTTLES, J.   In this action the libellant was granted a divorce upon the ground that the parties have lived apart for more than three years without fault on the part of the libellant, the resumption of marital relations not being reasonably probable.   Such living apart was made a ground for divorce by § 2 of No. 43 of the Acts of 1941, amending P. L. 3116, and no question regarding that Act has heretofore been before this Court.

The case is here on the libellee's exceptions to two of the findings of fact of the trial court which read as follows:

> "4. Until he left home he had to arise at five A. M. in order to drive to his work in St. Albans.   His wife neglected to prepare proper food for him so that he had to get his own breakfast every day and when he returned home from work at night he usually would find his wife away with the fires down and no supper prepared.   For two years before the final separation the libellee had refused to room with him and he had to have his washing done out and prepare his own meals.   He finally became dis-

couraged, made up his mind he could no longer stand the situation and left home.

"5. We find that the parties have lived apart for more than three years without fault on the part of the libellant and that the resumption of marital relations is not reasonably probable."

Other findings not excepted to but important for consideration were:

"2. The libellant is 67 years old, employed by the St. Albans Grain Company, has chronic bronchitis and gastric ulcers, and is physically unable to stand severe winter weather, and ought to spend the winter months in a southern climate. He ought not to work because of his physical condition but does so because of necessity.

"3. The parties were married in June, 1917, and in 1923 she left him for a year or two and then returned, and the parties lived together until January 31, 1931, when he left home and they have not cohabited as husband and wife since that time."

The libellee concedes that the parties have lived apart for more than three years and that the resumption of marital relations is not reasonably probable. The only issue is, therefore, whether such living apart was without fault on the part of the libellant. We consider the various grounds of her exceptions stated by the libellee, even though her brief leaves much to be desired in the way of argument and citation of authorities, and she has failed to cite pages of the transcript, as required by our rule, on which testimony is to be found that would support findings which she contends should have been made.

The libellee contends that the findings contained in Number four above, except the finding that the libellant had to arise at five o'clock and that he finally became discouraged and left home, are not warranted by the evidence. An examination of the transcript, however, satisfies us that each of these findings is directly supported by the libellant's evidence—for the most part by his own testimony. It is true that the libellee testified contra as to most of these facts, but the credibility of the witnesses and the weight of the evidence were for the trial court to determine (*Tay-*

*lor* v. *Henderson,* 112 Vt 107, 111, 22 A2d 318, and cases cited) and the findings as made are warranted unless, as claimed by the libellee, the law requires more corroboration than is to be found of the libellant's testimony.

The following is shown by the transcript. A former neighbor testified that he had been in Guibord's house at night when it looked as if Henry "just got his meals, from his talk it was as though he had cooked his meals." Q. "Was his wife there at the time?" A. "I don't know, I didn't see her." He further testified that he had seen the parties together when they both seemed to be quite high strung, little family spats, nothing very serious, and that it appeared unpleasant to an outsider. The libellee's testimony was self contradictory in places. She did not admit that the libellant complained about her not getting his meals but said that "he objected if I wouldn't get up at five o'clock in the morning." She testified that the libellant got up at about five o'clock and left for his work at about six; also that he never complained about his supper, and further "I might not have enough to eat perhaps. I got the best I could." Later she said that she prepared his meals the best she could with the money he gave her, but being asked, "what groceries he brought home and what you bought were there sufficient to give him the meals that he wanted?" answered, "plenty". She also said that her husband had an account at Prouty's store; that he paid his bills, and that she could go there and get groceries and have them charged to him.

This evidence has a tendency to corroborate, to a slight extent, the testimony of the libellant upon which the questioned findings are based, especially in regard to her neglect to prepare proper food for him.

In the ecclesiastical courts of England there was a general rule that no divorce could be granted on the uncorroborated confession or admission of the parties, owing to the danger of fraud or collusion on the part of the parties or of coercion on the part of the husband. In this country, however, in the absence of statutes to the contrary, there is, according to the weight of authority, no general principle of law which precludes the granting of a divorce on the uncorroborated testimony of the parties, although the courts, as a general rule, require the corroboration of admissions or confessions of the cause for divorce made by the respondent; and at the present time statutes in many jurisdictions provide that

no divorce shall be granted on the uncorroborated testimony of a party. 17 Am Jur Div. and Sep. § 384. In this state it has long been the practice of the trial courts, at least in uncontested cases, to refuse to grant a divorce upon the uncorroborated testimony of the libellant.

There being here some corroboration of the libellant's testimony it is unnecessary to examine the basis in law upon which this practice rests, and we merely inquire whether it was error for the trial court to treat this corroboration as sufficient. Many cases in other jurisdictions follow the rule that "some" corroboration is required. Annot. 65 ALR 169, 173. In New Jersey it has been said that the rule of corroboration only requires that belief in the truthfulness of appellant's testimony must find support in the testimony of others or of established circumstances (*Wines* v. *Wines*, 97 NJ Eq 55, 127 A 28) and also that the rule of corroboration does not require categorical corroboration. The rule is satisfied if the attending proof satisfies the chancellor that the petitioner's testimony on the whole is true. *Young* v. *Young*, NJ Eq, 126 A 467. The weight of the evidence being primarily for the determination of the trial court and there being in the present case some corroboration which satisfied the court of the truthfulness of the libellant's testimony we cannot say that it was error not to require further corroboration. But we are not to be understood as implying that a divorce can never be granted on uncorroborated evidence in a case that is vigorously contested where it is apparent that there is no collusion.

It is contended that the finding that for two years prior to the separation the libellee refused to room with the libellant has no tendency to support the conclusion that the separation was without his fault, because under our decisions the libellee's refusal to have marital relations would not alone warrant a divorce on the ground of wilful desertion. But we are here concerned with a distinct and different ground. From the fact that such refusal does not, alone, establish such fault on the part of the libellee as to entitle the libellant to a divorce on the ground of desertion it does not follow that such refusal could not, with other facts, have a tendency to show the libellant's freedom from fault in living apart from the libellee. Nor does the fact that the libellee's conduct might not be such as to warrant a divorce on the ground of intoler-

able severity prevent that conduct from having a bearing on the issue here involved.

Among the grounds urged for the libellee's exceptions to findings number four and five are the failure of the court to find that the libellant arrived home from work at night at an hour when meals could be expected to be prepared; that the libellee's health was such that she could perform all her marital duties; and that the libellant had fully kept the marriage covenant and performed all the duties appertaining thereto. While it is the better practice to report all the facts upon which an ultimate finding is based it is not legal error to omit to do so. *Montpelier* v. *Calais,* 114 Vt 5, 8, 39 A2d 350; *Allen's Admr.* v. *Allen's Admr.,* 79 Vt 173, 186, 64 A 1110; *Trask* v. *Walker's Estate,* 100 Vt 51, 55, 134 A 853; *Taylor* v. *Henderson,* 112 Vt 107, 116, 22 A2d 318. We will presume in favor of the decree that the court below inferred such facts from those certified up as it ought to have inferred or as it fairly might have inferred. *Labor* v. *Carpenter,* 102 Vt 418, 422, 148 A 867; *University of Vermont* v. *Wilber's Estate,* 105 Vt 147, 174, 163 A 572; *Fair Haven* v. *Stannard,* 111 Vt 49, 53, 10 A2d 214. We must presume, the contrary not appearing, that all the evidence bearing upon the issues was considered by the trial court with impartial patience and adequate reflection. *Putnam* v. *Woodard,* 111 Vt 39, 43, 10 A2d 186; *Patch* v. *Squires,* 105 Vt 405, 410, 165 A 919. If a man arrives home from his work at night with no unreasonable delay he may reasonably expect, in the absence of conditions which prevent, to have a meal prepared for him, and we assume, in favor of the decree, that conditions did not prevent preparation of his meals and that there was no unreasonable delay by the libellant in reaching home. So, too, we will assume that the court inferred that the libellee's health was not so poor as to prevent her from performing the duties, which it is found she failed to perform. The finding that she was usually away with the fires down when he arrived has some significance in this connection.

It is well settled that breaches of the marriage covenant which have been condoned, with no later infraction of the implied condition thereof, are not grounds for divorce. *Davidson* v. *Davidson,* 111 Vt 68, 71, 72, 10 A2d 197. Such condonation would likewise render such earlier breaches immaterial on the question of libellant's fault for a later separation. In the absence of a finding

on that subject we will assume that the court inferred either that the libellant had fully kept the marriage covenant, or that any breaches thereof had been fully condoned prior to the separation.

■ The contention that even if it were properly found that the libellant left the libellee without fault on his part it would not follow, without further findings, that he remained apart from her without his fault is unsound. The rule is that the court will infer that a particular fact or set of facts continues to exist so long as such facts usually, as a matter of experience, have been found to continue. *Smith* v. *Martin,* 93 Vt 111, 129, 106 A 666; *Nelson* v. *Bragg,* 113 Vt 161, 167, 32 A2d 140. The parties had been married about fourteen years when the separation occurred. We cannot say that three years thereafter was too long a period over which to apply the principle that the conditions which caused the separation were presumed to continue. Furthermore if the libellant were required from time to time during the three year period to offer to return to his wife and such offers were accepted without subsequent improvement in her conduct, resulting in the libellant's again leaving, the required period would continually recommence and, as was admitted in argument, the libellant would never become entitled to a divorce on this ground.

In our opinion finding number four, taken in connection with the other subordinate findings and the inferences that may properly be drawn from the findings amply support the ultimate finding that the parties had lived apart for the required time without fault on the part of the libellant.

■ Libellee's statement that it could well be said that the wrongful conduct of the libellant brought about the condition of which he complains must mean that the court could have so found or inferred, and if true is immaterial. If the evidence was such that either of two opposing conclusions might properly have been reached the choice between them depended upon the credibility of the witnesses and the weight to be given to all of the evidence as determined by the trial court. See *Putnam* v. *Woodard,* 111 Vt 39, 10 A2d 186.

*Decree affirmed.*