THELMA C. BELVILLE *v.* RALPH J. BELVILLE.

January Term, 1946.

Present: MOULTON, C. J., SHERBURNE, STURTEVANT, and JEFFORDS, JJ.

Opinion filed February 5, 1946.

*Sylvester & Ready* for the petitionee.

*Raymond B. Daniels* for the petitioner.

JEFFORDS, J.   On the facts found the libellant was granted a divorce for intolerable severity, and the case is here on exceptions by the libellee.  The only exception briefed is to finding No. 6 which is as follows:

> "On her threat to leave him he warned her that he would make her pregnant so that she could not leave him and succeeded in doing so, resulting in the birth of their second child.   She was afraid to leave him."

The exception to this finding was based on the grounds, in effect, that it was not supported by the evidence and that the undisputed evidence showed condonation of the acts of misconduct.

The undisputed evidence and reasonable inferences to be drawn therefrom pertinent to the questions in issue were as follows: The parties were married in July, 1942. About three weeks thereafter the libellee struck the libellant and from then on until she finally left him he frequently brutally assaulted her in various ways not necessary to describe. The libellee drank intoxicating liquor to excess and these assaults often took place when he was in an intoxicated condition. At various times the libellant called on the sheriff or the police for protection. The libellee several times threatened to kill the libellant and to bury her in the swamp on his farm, even showing her the exact spot where he proposed to bury her.

Because of abusive treatment the libellant left the libellee on three different occasions. The exact dates of the first two do not appear in the transcript but it is to be reasonably drawn from the evidence that the first time was in the early summer or late spring of 1943. At that time he would not let her take their child which was then about three months old. She left without the baby but found that she could not stay away from the child so she returned in a few days.

The second occasion was during the absence of the libellee to get the libellant's father who was quite ill. She felt it would be injurious to her father to come to their home under the conditions in which they were living so she took her child and rented an apartment in Barre for about a month and lived there until her father's death. The libellant testified that during this time the libellee "threatened me if I didn't come back." Finally he begged her to return and because of her love for his small children by a former marriage she did so.

The final separation took place after the libellant had learned of a purported marriage between her husband and a Miss Jones. Testimony of the libellant in regard to this occasion is as follows:

Q. "After you learned of this relationship between Blanche Jones and your husband did you leave then?

A. "Not immediately.

Q. "Why?

A. "I didn't dare to.

Q. "Well what was the particular reason that you didn't leave then?

Q. "I knew that if I left when Mr. Belville was home he wouldn't let me take my child and I am afraid of Mr. Belville and what he might do to me."

At other times during her testimony the libellant stated she was afraid of Belville while they were living together and was still in fear of him.

When the libellant knew that her husband was to be away on a business trip which would last from ten days to two weeks she told him she was going to leave him and he said that she could not; that he would make her have a child so that she could not leave and would have to live with him the rest of her life. She made plans to leave and when Belville went on his trip about April 15, 1944, she did leave their home about May 1 of that year.

The evidence of intercourse between the parties which the libellee relies on as conclusively showing condonation is to be found in the cross examination of the libellant and is as follows:

Q. "The last time you had intercourse with your husband was in January, 1944?

A. "Definitely not.

Q. "You tell us just when it was.

A. "It was some time between April 6th and 15th; it was several times, it wasn't just one time.

Q. "And he left on what date?

A. "Around April 15th.

Q. "You had intercourse with him several times between the 6th of April and 15th of April?

A. "That is true.

Q. "When you had that intercourse did you have any understanding about it or just went about it in the natural way and had your intercourse?

A. "It was the natural way.

Q. "Nothing was said?

A. "I talked with Mr. Belville about leaving and he told me that I would have a child so that I couldn't leave him.

Q. "And you willingly submitted to his having intercourse with you in order to conceive a child, is that right?

A. "I was afraid of Mr. Belville, I always did everything he said, at his orders.

Q. "Even to submitting to intercourse with him?

A. "Definitely."

Where findings are challenged upon the ground that they are without evidentiary support, they must stand if there is any legitimate evidence fairly and reasonably tending to support them. *Taylor* v. *Henderson*, 112 Vt 107, 111, 22 A2d 318.

Counsel for the libellee conceded on argument that there is evidence, as indeed there is, to support the first sentence in the finding in question but insists there is none to support the last sentence contained therein.

From evidence which we have set forth it is clear that the trial court was warranted in finding that the libellant was afraid to leave the libellee at the time of their acts of intercourse in April, 1944, which apparently is the time meant in the finding. The testimony of the libellant first above quoted is enough by itself to support the finding. This testimony clearly shows that the libellant was afraid to leave when Belville was home not only because of apprehension of what he might do to her but in addition because of fear that he would not let her take her child if he were there to prevent her so doing. There is other evidence in the case which clearly supports this finding of fear on the part of the libellant at the time in question.

The libellee claims that this quoted testimony of the libellant refers to a time early in their married life and subsequently to that time there is no evidence of such fear. From a reading of the transcript, however, it is very apparent that the testimony in question referred to a time very shortly before the final separation and there is nothing in the evidence to indicate that the libellant's fear of leaving while Belville was home changed from that time on.

The libellee also contends the two previous separations with returns by the libellant without harm to her show that she was not afraid to leave the libellee. But this is not so. The mere fact she had previously left and returned without harm would, at the most, merely go to the weight to be given to her testimony and other evidence showing fear of leaving at the time in question. Indeed it would seem that the facts and circumstances attending the other separations would, if anything, tend to support the finding under discussion.

■ Condonation to be effectual as a defense must be the voluntary act of the injured party, not induced by fraud, force or fear. *McLemore* v. *McLemore,* Tex Civ App, 285 SW 693; *Rex* v. *Rex,* 39 Ohio App 295, 177 NE 527; *Wilson* v. *Wilson,* 16 RI 122, 13 A 102; Schouler, Domestic Relations, Vol. 2 § 1702; 27 CJS 612. See also *Davidson* v. *Davidson,* 111 Vt 68, 72, 73, 10 A2d 197.

■ In order to have condonation it must appear that the injured spouse freely and voluntarily intended to forgive the matrimonial offense. *Betz* v. *Betz,* 25 NY Super Ct 694, 19 Abb Pr 90; *Shackleton* v. *Shackleton,* 48 NJ Eq 364, 21 A 935, 27 Am St Rep 478; Schouler, *supra.*

■ Since condonation must be the voluntary act of the injured party the doctrine is not so strictly applied against the wife as the husband because she often submits through necessity or fear. *McLemore* v. *McLemore, supra.* See also *Duberstein* v. *Duberstein,* 171 Ill 133, 49 NE 306; *Cumming* v. *Cumming,* 135 Mass 386, 46 Am Rep 476; *Shackleton* v. *Shackleton, supra;* Schouler, supra, Vol. 2 § 1701; 17 Am Jur 256, § 208; 27 CJS 609.

■ Condonation is an affirmative defense and the burden of proof is on the libellee. *Lipe* v. *Lipe,* 327 Ill 39, 158 NE 411; *Rich* v. *Rich,* 109 NJ Eq 216, 156 A 442; *Wilson* v. *Wilson,* 16 RI 122, 13 A 102; 27 CJS 608. Thus it was incumbent on the libellee to obtain a finding of condonation. *Manchester* v. *Townshend,* 110 Vt 136, 143, 2 A2d 207. Although there were several requests for such a finding none were granted. From the judgment in the case it is apparent that the lower court found that the libellee had failed to sustain his burden of proof on this issue. *Manchester* v. *Townshend, supra.*

Since the burden of proof was on the libellee the question is

whether the evidence showed condonation as a matter of law. The testimony of the libellant tending to show that she submitted to the intercourse in question through fear, supported as it is by other evidence in the case of assaults and threats showing warrant for such fear on her part, together with the evidence tending to show that she was afraid to leave Belville at the times of intercourse, fully justified the trial court in failing to find condonation.

We have said that condonation is ordinarily a question of fact but when the evidence respecting it is undisputed it is a question of law. *Davidson* v. *Davidson,* 111 Vt 68, 74, 10 A2d 197; *Adams* v. *Adams,* 102 Vt 318, 323, 148 A 287. In those cases the undisputed evidence showed that the acts of intercourse were voluntarily entered into by the respective libellants and we held that there was condonation as a matter of law. In the present case although the evidence in respect to the intercourse is not disputed and comes from the testimony of the libellant there was, as we have seen, evidence tending to show that the intercourse was induced by fear and consequently was not voluntary and not entered into with the intention of forgiving the marital offense. This being so, and the burden of proof on this issue being on the libellee, we hold that the evidence did not show condonation conclusively and as a matter of law.

The libellee argues that as the intercourse took place after the libellant had made plans to leave the libellee so that she at that time had no intention of continuing the marriage relation the acts under *Davidson* v. *Davidson,* 111 Vt 68, 74, 10 A2d 197, were of a "meretricious character". What is said in that case on this point does not apply here for in the Davidson case, as we have seen, the act of intercourse was held to be voluntary and to amount to condonation as a matter of law.

The libellee cites several cases relating to the right of a husband to have intercourse with his wife. These cases are not in point as none of the questions therein discussed is here in issue.

*Judgment affirmed.*