JESSIE R. WHITCOMB *v.* LYLE M. WHITCOMB.

(58 A2d 814)

February Term, 1948.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 4, 1948.

*Sylvester & Ready* for the libellee.

*P. L. Shangraw* for the libellant.

JEFFORDS, J. In this action the libellant was granted a divorce on the ground that the parties have lived apart for three consecutive years without fault on the part of the libellant, the resumption of marital relations not being reasonably probable.

The petition alleged five different grounds for a divorce. At the start of the trial the libellee moved that the libellant be required to elect the ground on which she would proceed. This motion was denied and the case is here on the exception taken to this ruling of the court and on exceptions taken to certain findings of fact and the decree based thereon.

The rule is, subject to certain qualifications not here material, that a libellant has a right to state in his petition as many causes of divorce as he has and is not required to elect. He can take proof on all and if he proves any one ground, he is entitled to a divorce. 27 CJS Divorce, §§ 11 and 106; 17 Am Jur Divorce and Separation, § 309. There was no error in the denial of the motion to require an election.

Exceptions were taken to four of the findings but in his brief the libellee complains only as to two of them. These are findings 11 and 12 which are as follows:

> 11. "The separation of the parties in 1938 was without fault on the part of the libellant and the continued separation has likewise been without fault on her part."
>
> 12. "A fair distribution of the joint property of the parties is a cash payment by the libellee to the libellant of $7,000.00, she, in turn, to convey and assign all of her rights, title and interest in the joint property to the libellee."

The grounds for the exception to number 11, as briefed, are, in substance, that it has no evidence to support it and that it is based on the uncorroborated testimony of the libellant.

From the undisputed evidence and from findings not excepted

to the following facts appear. The parties were married in 1917. Shortly after the marriage the libellee entered the army. Upon his discharge the libellant and libellee lived in South Troy where the libellant worked for a public utility company. In 1934 the libellee served a term in the state's prison for the crime of adultery. Upon his discharge his wife met him and they went to live at the home of her mother in Sheldon. During the first year there things went well but during the second year the libellee drank, went away on three or four day unexplained trips and became cross and irritable. About July 4, 1938, the libellee left the home in Sheldon without telling his wife where he was going. Three or four days later he came back, took his automobile and did not return until sometime in December of that year, when he came to get his clothes. He then left and the parties have not lived together since that time.

The libellee makes no claim, and upon the evidence could not, that the separation was brought about by any fault of the libellant. His claim is, in effect, that it was the duty of the wife to follow her husband to the house in Troy which they had purchased while living there and to which, the evidence tends to show, he went in December. This house had been purchased for $700.00. In December, 1938, it was occupied by two families and apparently continued to be so occupied up to the time of trial. The only room available for occupancy by the libellant and libellee was a storeroom in which furniture of the parties was stored. The libellee lived in this room while in Troy and had lived in several other places up to the time of trial.

The libellee testified that while in Troy he wrote his wife several times asking her to come there and live with him. The libellant denied receiving any letters from him. The court found, in effect, that no such letters were ever mailed by the libellee. An exception was taken to this finding but not being briefed is waived. But if briefed, the exception would have been of no avail as the finding was warranted by the evidence.

The libellee claims it can make no difference whether or not he requested the libellant to leave Sheldon and come to live with him, as from her own testimony it appears that she would not have gone though requested, and the libellee says the law does not require the doing of a useless act.

The evidence upon which the libellee relies in support of his

claim that any request by him to his wife to go to Troy to live with him would have been useless is based on the testimony of the libellant during her cross examination. She stated that at the time of the separation in December she said "If you want anything of me I will be here" and that the libellee replied "If you want anything of me I will be at my home in Troy". The libellant also testified, in substance, that after the separation she would no longer have been willing to live with the libellee. It is possible to construe her testimony to mean that her attitude in this respect was the same after the leaving the previous July. She also stated she thought it was a good thing to get rid of him—"A good riddance", and that "I stood it long enough; he had been gone enough".

■■ If the husband provides a suitable home it is the duty of the wife to live with him, if properly supported and treated. *Milton* v. *Bruso,* 111 Vt 82, 85, 10 A2d 203, and cases cited. From the evidence which we have recited it is clear that the court could well have found that the storeroom in the house in Troy was not a suitable home and that the libellant had not been properly treated by the libellee prior to the separation. There is no express finding to this effect. While it is the better practice to report all the facts upon which an ultimate finding is based it is not legal error to omit to do so. We will presume in favor of the decree that the court below inferred such facts from those certified up as it ought to have inferred or as it fairly might have inferred. *Guibord* v. *Guibord,* 114 Vt 278, 283, 44 A2d 158, and cases cited. It follows that there was no error in the making of the ultimate finding number 11.

The claim that the above finding is based on the uncorroborated testimony of the libellant is without merit. The material facts of the case, as here presented, relate to the suitableness of the storeroom in the house in Troy for a home and the treatment of the libellant by the libellee. The testimony as to the first of these facts came from the libellee, corroborated by the libellant. The testimony of the libellant as to her treatment by the libellee was corroborated to a certain extent by that of two other witnesses.

By our discussion of this claim of lack of corroboration we again state that we are not to be understood as implying that a divorce can never be granted on uncorroborated evidence in a case that is contested where it is apparent there is no collusion. See *Guibord* v. *Guibord, supra,* at page 282.

The last exception briefed by the libellee relates to finding number 12 and that part of the decree based thereon.

Upon the dissolution of a marriage, the court may decree to the wife such part of the husband's property, or such sum of money in lieu thereof, as it deems just, having regard for the circumstances of the parties, respectively. P. L. 3155. In fixing the amount of the award, the court is vested with a wide, but judicial discretion. In determining what will be a just award it is the duty of the court to give consideration to all facts affecting the situation of either party that will be helpful to such determination. *Shaw v. Shaw,* 99 Vt 356, 358, 133 A 248.

The undisputed evidence disclosed that at the time of trial the parties had accounts in savings banks standing in their joint names in the amount of $12,770.00. The larger part of this amount was contributed by the libellee. During the time of about 14 years that the parties lived in Troy the wife helped the husband in his work and received pay for so doing. This pay, together with that of the husband's, was used by the parties to pay their living expenses and any balance was deposited to their joint account. In addition to this cash the parties owned the house in Troy.

During the libellee's service in the army he contracted a service connected disability, as a result of which he receives compensation of $62.10 per month, and this disability has been rated as permanent. The health of the libellee is not good and he at times requires medical attention. He is not able to perform continuous hard labor but would be able to do such work as carrying on a small farm.

The libellant is troubled by lameness in her hands so that her ability to work is restricted. She is able to do housework and take care of her hens which number about 100. Her only income is from the hens and from rent of the house in Troy, the small amounts of which she received from time to time. The latter income, of course, would cease upon the carrying out of the terms of the decree.

In view of the above evidence, we cannot say, as a matter of law, that the allowance of alimony set forth in finding number 12 and incorporated in the decree is so unreasonable and unjust as to amount to an abuse of the discretion vested by law in the trial court.

*Decree affirmed.*