## Charles Goodwin Castle v. Annette R. Castle

(100 A2d 574)

October Term, 1953.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed November 3, 1953.

*Ryan, Smith & Carbine* for the libellee.

*Wayne C. Bosworth* and *Frederick A. Bosworth* for the libellant.

**Sherburne, C. J.** In this action the libellant was granted a divorce upon the ground that the libellant has lived apart from the libellee for three consecutive years without fault on the part of the libellant and the resumption of marital relations is not reasonably probable. The libellee has ex-

cepted to the refusal of the court to find as requested, to the findings as made and to the decree. The findings that the parties have lived apart for three consecutive years and that the resumption of marital relations is not reasonably probable are not questioned. The only question raised is whether the parties have so lived apart without fault on the part of the libellant within the meaning of V. S. 47, §3205, subd. VII.

Among other things the findings show that the parties were married on September 28, 1927 and have two sons, one born in 1928, the other in 1932. While the parties were living in Lebanon, New Hampshire, quarrels and discords frequently developed between them and on occasions the libellee became highly agitated and slapped and pushed the libellant. This domestic discord came about as the result of her persistent and repeated criticism of him and her distrust regarding his conduct. On occasions she falsely accused him of affairs and interest in other women. In February, 1942, because of her conduct, he left and obtained employment elsewhere with no intention of returning although he made regular payments for the support of his family, and did return in October, 1943. Because of the continuance of these domestic troubles marital relations between the parties terminated in 1945, and he took the two sons to live with him in Middlebury, Vermont. Other findings will be discussed in connection with the matters briefed.

The first point made by the libellee is that the findings are without proper foundation because based upon the unsupported and uncorroborated testimony of the plaintiff. In *Guibord* v. *Guibord*, 114 Vt 278, 282, 44 A2d 158, it is pointed out that it has long been the practice of our trial courts, at least in uncontested cases, to refuse to grant a divorce upon the uncorroborated testimony of the libellant. But in *Whitcomb* v. *Whitcomb*, 115 Vt 331, 334, 58 A2d 814, it is stated that we are not to be understood as implying that a divorce can never be granted on uncorroborated evidence in a case that is contested where it is apparent there is no collusion. In some respects the testimony of the libellant is supported by that of the libellee. It is apparent here that there is no collusion between the parties, and we have no hesitation in holding that the trial court, whose duty it was to pass upon the

credibility of the witnesses and to weigh the evidence, could here properly find facts from the uncorroborated testimony of the libellant.

The second point made is that the conclusion that the libellant was without fault is nullified by other findings made by the court. Two propositions are here relied upon. First, it is claimed that the testimony of the parties and the findings show that the parties continued to cohabit as husband and wife until their actual separation in 1945, and it is claimed that a finding that normal marital relations did not terminate until after the alleged misconduct had ceased would show a condonation. Since our attention is not here called to any page in the transcript we limit our consideration to the findings. These show that the libellant acquired a watch and jewelry business in Middlebury, Vermont, in 1944, returning to his family in Lebanon on week ends. We quote: "The domestic discord and distrust on the part of the libellee towards the libellant continued and marital relations were terminated in 1945. By reason of the libellee's jealousy, distrust and repeated accusations of interest on the part of the libellant toward other women, the libellant finally informed the libellee that he no longer wished to reside with her and that he intended to separate, taking himself and his sons to Middlebury, Vermont, to establish a permanent residence. On this occasion the home of the parties in Lebanon, New Hampshire, was given up and the libellee entered a hospital in Boston for surgical treatment." These findings are somewhat obscure, but we think that it can be reasonably and fairly inferred therefrom, in support of the ultimate finding and the decree that the parties have lived separate and apart for three consecutive years without fault on the part of the libellant, that such domestic discord continued after any marital intercourse and up to the moment of separation.

Secondly, our attention is called to a finding that in Augt ust, 1946, the libellee brought proceedings against the libellanfor support under the provisions of P. L. 3166, now V. S. 47, §3256; that the parties entered into a stipulation in which it appeared that the libellant had on hand the sum of $5,000.00 in cash and owned real estate to the value of $1,200.00, and

agreed to pay the libellee $1,250.00 therefrom in full of all claims for alimony and suit money, and agreed that the balance of the money and the real estate should be devoted to the education of the two children; that the court ordered $1,250.00 paid to the libellee pursuant to such stipulation; and that the terms of the stipulation and order have been complied with. The libellee now contends that the conduct of the libellant in entering into the stipulation and in complying with its terms do not corroborate his claim that the misconduct of the libellee drove him to leave her, but is in the nature of a judicial admission that, as late as January 20, 1949, he did not consider his separation from her was justified, and that the facts testified to by him and found by the court either did not exist or were not of sufficient magnitude and seriousness to justify the separation. We have quoted all that the libellee says in her brief upon this subject. It is inadequately briefed and merits no consideration. However, the court by reporting this proceeding would seem to have considered it for what it is worth in arriving at its conclusions.

Finally, the libellee says that the requirement that the libellant must prove that the separation was without fault on his part is not satisfied by proof and findings that he was not guilty of adultery or any misconduct which would justify libellee in divorcing him. She contends that the burden is upon him to show that the separation occurred either by mutual consent of the parties or only after every reasonable effort on the part of the libellant to make the marriage a success. She says the libellant owed her a duty to bring her shortcomings to her attention and to afford her an opportunity to remedy them, and that she had no idea until Easter, 1945, that he found their union distasteful or was planning to separate. It would seem that the domestic discord should have been sufficient notice to her that her husband did not like to be unjustly accused of affairs with other women; when a wife repeatedly and over a long period of time falsely accuses her husband of adultery she should know, without being reminded, that such accusations must distress him, and that any self-respecting man would not endure them forever. This is not a case of a trivial neglect such as irregularity in preparing

meals or failure to darn her husband's socks, where the husband has not suggested that he expects anything different. The findings show that the libellant has made every reasonable effort to get along with the libellee.

Error is not made to appear.    *Decree affirmed.*