# Anton M. Lafko v. Irma K. Lafko

[ 256 A.2d 166 ]

April Term, 1969

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 19, 1969

610

*Waldo C. Holden, Esq.,* for the Plaintiff.

*Ehrich & Mollica* for the Defendant.

**Holden, C.J.** The parties to this divorce proceeding were married in Brooklyn, New York on November 5, 1955. They have four minor children whose custody is severely contested. The marriage has been a stormy one, interdicted by continuing discord and various separations.

While the Lafkos were residing in New Jersey in 1961, the libellant left his wife and family and took up residence in Londonderry, Vermont. Several months later Mrs. Lafko joined her husband who was engaged in various enterprises in the vicinity of Londonderry. She assisted her husband in the operation of a ski lodge until July 1967. At that time continuing discord finally disrupted the family and the libellee left Vermont and took the children with her.

In November of that year the husband, who we refer to as the libellant, commenced the present action, seeking a divorce for intolerable severity and separation for three years. The libel also requests custody of the children. Mrs. Lafko, referred to as the libellee, denied the charge and countered with a cross-libel. She petitioned the court to

dismiss her husband's libel and grant her a divorce for his adultery, intolerable severity and non-support.

At the ensuing term of the Windham County Court, on May 24, 1969, the husband Anton withdrew his request for a hearing in the cause and formally objected to any hearing on the cross-libel. The basis of his objection is specified—"1. Libelee is not entitled to be heard on the Cross Bill until the libel is heard. 2. Libellee does not have the Vermont residence required by law. 3. To date, the parties have been unable to resolve by agreement essential questions." This was followed on August 27 by a request for more complete sepecifications of the adultery charge.

It appears from the docket entry that the "case was left with the Court on final adjournment." The cause came on for hearing before the Windham County Court on September 3, 1963, a week prior to the opening of the next stated term of court. The county court heard the case. The libellee's cross petition for divorce was granted on the ground the libellant had treated her with intolerable severity. The care and custody of the children was also awarded to their mother. The original libel was dismissed.

The libellant appeals. He complains that he was not granted an opportunity to be heard on his objections to the court's hearing the case on the cross-libel.

It is apparent from counsel's statement on the record that the subject of his prior objections was considered in the prehearing conference before the court proceeded to the merits.

> MR. HOLDEN : Probably to summarize our conference in Chambers we call attention of the Court to our objection filed this spring. Also it is our position that sufficient specifications have not been furnished on the adultery charges. We do defer, subject to the ruling of this Court, and permit the cross libellant to go forward if the Court so rules. We are not going forward at this time on our original libel.

> COURT : The Court understands you are here only in defense of the cross libel.

> MR. HOLDEN : And on the custody matter to the extent it is raised.

To properly preserve a question for appellate review, the objector, or moving party, as the case may be, should affirmatively

demonstrate in the record that his position and the action which he desired the trier to take was made known to the court. 12 V.S.A. §2381; *City of Barre* v. *Brown,* 121 Vt. 469, 471, 160 A.2d 885. In this instance, while the record fails to disclose any express ruling on the libellant's objection, the fact that it went on to hear the merits of the cross-libel was an implied ruling that the libellant's objections were denied. This is sufficient to support review of the questions raised in the libellant's objections to the hearing. *Vermont Shade Roller Co.* v. *Burlington Traction Co.,* 103 Vt. 293, 308, 153 A. 563; *Davis* v. *Union Meeting House Society,* 92 Vt. 402, 405, 105 A. 29; 5 Am.Jur.2d, Appeal & Error §557; 4 C.J.S. Appeal and Error §§320-321.

The case had not been heard at the time of final adjournment, although apparently the case had been set for hearing at the March Term of court. In any event, it appears from the docket entries that the present case was left "with the court" at final adjournment. The appellant contends the court was without jurisdiction to hear the matter after adjournment. Although the question was not presented to the lower court, we will examine it since it is stated on jurisdictional grounds.

Jurisdiction, to be complete, must be of the person, the process and the subject matter. *Perry* v. *Morse,* 57 Vt. 509, 513. The power of the court, as to person and process, may be conferred by waiver and consent. But the power of the court to deal with the subject matter of the controversy can be generated only by force of law. It is unaffected by agreement or conduct of the parties. *Aguirre* v. *Aja,* 113 Vt. 123, 125, 30 A.2d 88.

The Legislature has not restricted the general jurisdiction of county courts to particular terms of courts. The power conferred on these tribunals over causes within the subject matter of their jurisdiction is continuous. *State* v. *Alfred,* 87 Vt. 157, 160, 88 A. 534.

In earlier days, the time of "the rising of the court" had special procedural significance, for the issuance of executions and the taking of appeals were measured from that event. And a case left "with the court" before No. 35 of the Acts of 1898 took effect did not extend the time imposed by statute. See *Mead* v. *Town of Moretown,* 72 Vt. 323, 324, 47 A. 1072; *Yatter* v. *Miller,* 61 Vt. 147, 152, 17 A. 850. The hardship of these procedural roadblocks was alleviated by the 1898 enactment. 4 V.S.A. §118.

This statute permitted the court to withhold any cause from the effect of adjournment, without consent of the parties, to enable full and final disposition of the case. *Morgan* v. *Gould,* 96 Vt. 275, 278, 119 A. 517. Under this statute the entry "with the court" gave the court power to hear and determine the cause during the vacation before the opening of the next stated term. *Leonard* v. *Willcox* (1928), 101 Vt. 195, 207, 142 A. 762. However, this limitation was enlarged the following year by the enactment of 4 V.S.A. §119 (1929, No. 40 §2) to provide:

> Whenever the presiding judge or the judges of a county court have begun the hearing of a cause on its merits at a stated term thereof or in vacation after a stated term, he or they may finish such hearing and render judgment therein at any time before the opening of the second stated term thereafter. The expiration of his term of office shall not disqualify any judge so to act.

In the instant case, hearing on the merits was begun by the judges of the Windham County Court in the vacation of the March Term 1967. Findings and the decree were filed during the next stated term. Since full compliance with the terms of the statute is apparent, the claim that the lower court's jurisdiction had expired is without merit. *Appliance Acceptance Co.* v. *Stevens,* 121 Vt. 484, 487, 160 A.2d 888.

The findings state that Mrs. Lafko is presently residing with her parents in New Jersey. The appellant urges that her residence outside Vermont deprived the court of jurisdiction to hear and determine the cause on her cross-libel.

The requirements of residence are set forth in 15 V.S.A. §592:

> A libel for divorce or annulment of marriage may be brought by a person who has resided within the state for a period of six months or more, but a divorce shall not be decreed for any cause, unless the libelant has resided in the state one year next preceding the date of final hearing. Temporary absence from the state because of illness, employment without the state, service as a member of the armed forces of the United States, or other legitimate and bona fide cause, shall not affect the six months' period or the one year period specified in the preceding sentence, provided the person has otherwise retained his residence in this state.

Counsel for the libellant cross-examined the libellee on the question of her change of residence:

Q. You wanted to stay in New Jersey?

A. I wanted a separation until I could see if he would get a job and I wouldn't have to work.

Q. On that occasion you preferred to stay in New Jersey?

A. Yes.

Q. You stayed in New Jersey?

A. Temporarily.

Q. What do you mean?

A. I have nowhere else to go.

The true rule of law in this jurisdiction was expressed by Chief Justice Powers in *Miller* v. *Miller,* 88 Vt. 134, 136, 92 A. 9, 10, L.R.A.1915D, 852. The question in that appeal concerned the absent wife's right to institute the original libel.

"The term 'reside' is used in different senses, and if this statute makes actual living here for the time specified a prerequisite, the libellant fails to make a case; for she was living in Chicago and not in Vermont during that time. But, having in mind the evil which the statute was designed to guard against—fraudulent divorces—we do not think that, in a case like this, it is necessary for the libellant to actually live in this state during the year pre-ceding the filing of her libel. It is sufficient if her legal domicile is here. This is generally so held, and sufficiently appears from *Turner* v. *Turner,* 87 Vt. 65, 88 A. 3, 47 L.R.A.,N.S., 505. And her legal domicile *was* here, because her husband's was here; and the general rule is that the husband's domicile is that of the wife. True it is that when compelled by his misconduct to leave him, she may acquire a separate residence. *Patch* v. *Patch,* 86 Vt. 225, 84 A. 815. But she is not obligated to do so. He cannot by his bad conduct compel her to acquire a new domicile for herself; she may retain his, though she lives elsewhere. *Duxstad* v. *Duxstad,* 17 Wyo. 411, 100 P. 112, 129 Am.St.Rep. 1138." Compare *Tower* v. *Tower,* 120 Vt. 213, 224, 138 A.2d 602.

■■ Contrary to the libellant's contention, whether the absent libellee intended to return to Vermont is not of controlling importance. The libellee, when called upon to answer the complaint of a resident libellant, acquired standing to maintain her cross petition. Having

invoked the court's jurisdiction to settle his matrimonial difficulties, the libellant, by failing to prosecute the libel, cannot foreclose his wife from such affirmative relief as the facts and circumstances between the parties require. *Friedrich* v. *Friedrich,* 230 Mass. 59, 119 N.E. 449, 450; *Aucutt* v. *Aucutt,* 122 Tex. 518, 62 S.W.2d 77, 89 A.L.R. 1198, 1202 and annotation which follows; *Anderson* v. *Anderson,* 26 Conn. Sup. 490, 227 A.2d 431; 24 Am. Jur.2d, Divorce & Separation §265.

The decree of divorce to the libellee, on the grounds of intolerable severity, is based on several findings. The court found that the trouble started in 1958 when the libellant struck his wife with sufficient force to render her unconscious. He struck her again in 1962. Both events were the outgrowth of arguments over the libellant's attention to other women. Although the court was unable to find, by the required measure of proof, that the libellant had committed adultery in the specifics claimed by the libellee, it found his relations with other women "to be of questionable propriety and in utter disregard of and for his marital duties, obligations and concern for the welfare of the cross libellant." The court further found that on one occasion the libellant informed his wife that he desired a divorce that he might marry Louise Heck, but through intercession of his wife's father, he abandoned the proposal.

The court determined that the libellant's indiscretions with other women caused mental distress and anxiety for Mrs. Lafko and aggravated an asthmatic condition from which she suffered. This course of conduct produced humiliation and embarrassment to the libellee. The findings also report that although she was fully aware of her husband's conduct and was the victim of it, she did not condone it, but lived in hope that the situation would change for the better.

The evidence, upon which these findings stand, can be gathered from the testimony of both parties. The libellant's evidence in this regard was in explanation of his association with the several women involved. There was no disclaimer on his part that he attended these companions nor that he spent time in their company. That this conduct adversely affected his wife by causing her anxiety, embarrassment and mental agony, which aggravated her asthmatic condition, is not questioned.

It was the duty of the trial court to pass on the credibility of the witnesses and the inference to be drawn from all the evidence pre-

sented. The record justifies the facts reported in the court's findings. *Castle* v. *Castle,* 118 Vt. 112, 113, 100 A.2d 574.

■ The facts found established continuing misconduct on the part of the libellant which produced physical harm, grief and anguish to the point of impairment of the libellee's physical and mental health. This constitutes adequate cause for divorce on the ground of intolerable severity. *Paquin* v. *Paquin,* 125 Vt. 243, 245, 214 A.2d 90; *Mathewson* v. *Mathewson,* 81 Vt. 173, 179, 69 A. 646, 18 L.R.A.,N.S., 300.

■ The libellant claims fault in the trial court's finding that the libellee did not condone her husband's misconduct. The burden of proof on the issue is on the party claiming it as a defense. *Padova* v. *Padova,* 123 Vt. 125, 127, 183 A.2d 227; *Belville* v. *Belville,* 114 Vt. 404, 409, 45 A.2d 571. The only evidence to which we have been referred by the appellant, developed on cross-examination of the libellee.

Q. You testified to what transpired over the years you were living as husband and wife with Mr. Lafko until June 1967, did you not?

A. Yes.

■ Condonation is a doctrine of conditional forgiveness. It is the obligation of the offending partner to refrain from further misconduct. In the present case the libellant produced no evidence that he was granted forgiveness by his wife, either actual or by implication through resumption of intimate relations after the final act of cruelty. See *Rudd* v. *Rudd,* 66 Vt. 91, 94, 28 A. 869. As for prior misconduct, the innocent partner's continuing forbearance, in the hope of saving the marriage, should not work a forfeiture of relief if further violations of the convenant persist. *Duckett* v. *Duckett,* 143 Md. 551, 123 A. 55, 57; annotation 32 A.L.R.2d 131 §10.

The decree granting a divorce to the libellee on her cross-petition for the cause of intolerable severity is sustained. This result precludes an action on the original libel and it was properly dismissed.

Concerning property disposition, the court found that the equity in real estate located in the town of Londonderry, Vermont, should be divided equally between the parties. The decree was in accord with this determination.

The libellant requested a finding to the effect that the property of the parties, a ski lodge in Vermont, was purchased from the sale of their home in New Jersey, which was acquired by way of a gift from the libellant's grandfather. The request is substantially supported by the evidence. However, it is not essential to this aspect of the decree.

 The original source of the funds from which the property was acquired is not of controlling importance. There is no indication that the gift was to Anton alone. There are other findings which make it clear that the libellee assisted in the operation of the ski lodge and other enterprises in the ski industry which the libellant conducted.

 Upon the granting of a divorce, the trial court has a wide judicial discretion. It may decree the property as it deems just, whether held separately, jointly or by the entirety. 15 V.S.A. §751; *Raymond v. Raymond,* 120 Vt. 87, 96, 132 A.2d 427; *Whitcomb v. Whitcomb,* 115 Vt. 331, 335, 58 A.2d 814. The facts presented show no abuse of the court's discretion in decreeing the property to the parties as tenants in common. Since the court's discretion was not exceeded, the decree in this respect must stand. *Wacker v. Wacker,* 114 Vt. 521, 523, 49 A.2d 119.

Much of the hearing in this cause concerned the sensitive question of custody of the four minor children of the parties. The two older children are girls; Vencka, born June 14, 1956 and Randi who was born July 9, 1957. Anton, the older son, is in his eighth year and Kristofer is nearly four. The decree awarded full custody of all the children to their mother.

This accomplishes a substantial change from the custody provided in the temporary order. By that order and with the consent of the parties, the three older children have remained with their father and have attended school in Vermont since September 1967.

It may prove unfortunate that it has been decreed that this arrangement be terminated. It appears from evidence, given by the girls' teacher, that they want to remain in Londonderry. More important, they are described as —"delightful children, very outgoing, very responsive, very conscientious, very well-liked by their classmates, very successful in their school work. They are utterly. charming children." These facts are confirmed by other evidence.

Yet the trial court has determined there are other considerations which led it to a different result. They are reported in these findings:

618

17. The cross-libellant is a competent, capable, dutiful and faithful wife and a good mother and no believable evidence was introduced to the contrary.

19. The Court has in mind that the cardinal consideration in custody cases is the welfare of the children involved, which includes their physical, intellectual, moral and spiritual well-being. To these, the rights of parents and all other considerations must be subordinated. Having this criteria in mind, *i.e.,* the welfare of the children, the Court feels, and so finds that the minor children of the parties, especially the girls, unless there is some compelling reason to the contrary, should be committed to the custody of the mother, who in common experience is better fitted to have charge of them. The cross-libellant has the necessary facilities to properly care for the minor children. She but needs help to finance their care and support.

20. The cross-libellee employs a 25-year-old divorcee to keep and maintain his home in South Londonderry, Vermont. He pays her $100 a month plus "board and room." It is this home the three older children are occupying. The Court does not believe this to be a proper environment in which to bring up young children, especially children in their formative years. The Court finds the children's welfare will best be served by committing them to their mother, the cross-libellant.

22. The cross-libellee has a propensity to spend his earnings for non-essentials rather than to support his family.

■■■ These findings are well-supported by the record. As in all such causes it is regretful that parental discord and irresponsibility have thrust the awesome responsibility of settling the sensitive issue of custody upon the courts. In discharging that function, the court was clearly mindful that the opposing desires of hostile parents and the preferences of their offspring must yield to the paramount consideration of the children's well-being. *Loeb* v. *Loeb,* 120 Vt. 489, 493, 144 A.2d 825; *Deyette* v. *Deyette,* 92 Vt. 305, 309, 104 A. 232, 4 A.L.R. 1115.

■■■ This determination most often involves a balancing of advantages and disadvantages which would result in granting custody

to one or the other parent. In the often hostile and vindictive atmosphere of a contested divorce proceeding, the trial judge has a vantage point not open to appellate review. Thus—"(r)egardless of what this court, or some other court might have done in the circumstances, the record does not show that the discretion of that court was exercised on grounds or for reasons, clearly untenable, or to an extent clearly unreasonable, which is the recognized test in this state." *McKinney* v. *Kelley*, 120 Vt. 299, 309, 141 A.2d 660, 667, quoting *Temple* v. *Atwood*, 99 Vt. 434, 435, 134 A. 591.

There is an aspect of the decree that does require revision. That concerns the libellant's rights of visitation. The father is "granted the right to visit the children at reasonable times and places provided he is in full compliance with the order made therein." The right is left undefined and is conditioned upon all other demands of the decree, including the prohibition against remarriage, the requirement of counsel fees and support.

It is not open to question in the record that there are strong ties of mutual love and devotion between the children and their father. This much is judiciously admitted by their mother. The record demonstrates also that the prime consideration of the children's welfare demands paternal association and concern in addition to that provided by the mother. *Loeb* v. *Loeb, supra,* 120 Vt. at 493, 144 A.2d 825.

To gear this important custodial factor to full compliance with all other provisions of the decree will not serve the best interests of the children or their parents. It leaves the crucial question open to nagging uncertainties with the children presumably outside the reach of the jurisdiction of the court that imposed the condition. The correction of this shortage in the decree requires a remand for revision of so much of the custody provision as may be necessary to clarify the custodial rights of the parents and settle the situation for the children. Otherwise, the decree is affirmed.

*Decree affirmed except as to the provision concerning visitation and the related provisions affecting custody. Cause remanded for further proceedings to revise the decree in accordance with the views expressed in this opinion.*