### Bernice E. Gallant v. Charles R. Gallant

[270 A.2d 593]

No. 124-69

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed September 10, 1970

*Joseph C. McNeil,* Burlington, for Plaintiff.

*John A. Burgess,* Montpelier, for Defendant.

**Smith, J.** This is an appeal taken by the libellee, Charles R. Gallant, from an Order and Decree granting the libellant a decree of divorce on August 30, 1969, by the Chittenden County Court on the grounds of intolerable severity.

The libellee, appellant here, presents two questions for our consideration: 1. Did the appellant's mental condition as a matter of law bar libellant from obtaining a divorce? 2. That the Court's findings on the issue of condonation are contrary to the evidence and, as a matter of law, insufficient to support the decree.

The parties in the case were married on July 23, 1955, at Cranston, Rhode Island, and lived in that state until April of 1967 when they moved to Williston, Vermont. There have been born of the marriage three children, all of whom are still in their minorities. The libellant brought her bill of divorce in the

Chittenden County Court in February, 1968, on the grounds of intolerable severity.

It was the testimony of the libellant that the libellee had struck her repeatedly on several occasions in front of her children, with injuries on at least one of these occasions so severe that she was required to be hospitalized. She testified she lived in constant fear of the libellee because of such physical abuse received from him and threats made by him to her that he would repeat such actions in the future. The libellee admitted the committing of such violence to the libellant, so that the fact that such intolerable severity did occur is not here disputed. The contention of the appellant is that he was suffering from such insanity at the time of such misconduct that it shielded him from responsibility for his actions.

The appellant did not plead his insanity as a defense to the divorce action of the libellant, although he appeared in such action by a guardian *ad litem,* apparently at his own request and choosing. A plea of insanity must be made by a person indicted or informed against for a criminal offense. 13 V.S.A. § 4803. We note that in our earliest case upon the question of insanity being a bar to an action for divorce, the alleged insanity was apparently pleaded in defense. *Nichols* v. *Nichols,* 31 Vt. 328 (1858). In any event, we think that insanity as a defense to a divorce action is an affirmative defense as defined in 12 V.S.A. § 1024, and as such should be pleaded in all future divorce proceedings where it is relied upon.

The extensive and complete findings of fact made by the court below devote Findings 18 through 23 to "Libellee's Mental Condition".

"18. Libellee's counsel urges upon us the argument that the mental condition of the libellee is and was such as to preclude responsibility on his part for the acts of intolerable severity. We note that this matter was not pleaded, and seems to be inconsistent with his contention that his visitation rights with the children should include a right to have them with him, alone, on trips, in the event a divorce is granted.

19. There can be no question, on all the evidence, and from observing the libellee on the witness stand, that he

has now, and has had a psychiatric problem. He had a short voluntary commitment when the parties resided in Rhode Island. And, in Vermont, in early 1968, he spent almost all of the first four months either in the DeGoesbriand Unit or the Waterbury State Hospital as a voluntary patient, although continuing his daytime employment during a large part of this period.

20. His symptoms, during these periods and at other times, have been schizophrenic in nature, characterized by disorganization, agitation, unusual concerns about his sex and work abilities, gross anxieties, and a conviction of persons working against him.

21. He has, however, recognized his own problems to the point of voluntary treatment and commitment. And, except for a brief period, he has continued to perform satisfactorily in his rather responsible employment as a senior designer at IBM, even working extensive overtime.

22. We find that, while his mental condition may, at times, have influenced his conduct, it does not account for the persistent and continued nature of his acts of intolerable severity. Nor was it, except for a brief period, such as to prevent him from making rational judgments, realizing what he was doing, and being aware of the consequences of his actions.

23. Apart from any question of pleading, we find that the defense of insanity is not sustained, and that in general the acts of intolerable severity complained of were the responsible acts of the Libellee."

The weight and sufficiency of evidence is for the trial court, on the issues of both intolerable severity and recrimination. *Tucker* v. *Tucker*, 127 Vt. 252, 253, 246 A.2d 707 (1968).

"It was for the trial court to consider and weigh all this evidence together, having the advantage, which we do not, of observing the witnesses as they testified. Insofar as the evidence was conflicting, all conflicts must be resolved against the excepting party." *Raymond* v. *Raymond*, 120 Vt. 87, 93, 132 A.2d 427 (1957).

In the case of *Nichols* v. *Nichols, supra,* this Court recognized that insanity was a defense in a divorce action based

upon such grounds as intolerable severity and adultery, although this recognition seemed to be based upon "general insanity", whatever that term may have meant in 1858, before modern psychiatry had made its appearance in American courts. Today, as admitted by the appellant, not every mental disease, of whatever degree, will shield a divorce litigant from responsibility. 24 Am.Jur.2nd, Divorce and Separation § 239.

In Vermont, neither the statutes, nor this Court, has as yet set forth a test of insanity as applied to its being used as a defense for misconduct in divorce actions.

In the case of *White* v. *White,* an English case reported in 2 All E.R. 389, 19 A.L.R.2d 130 (1950), the defense of schizophrenia was interposed as a defense in a divorce action for cruelty. The English court reasoned that the mere fact that the acts complained of as cruelty were done by the defendant as a result of a diseased mind did not constitute a defense to the action for divorce on the ground of cruelty if he knew what he was doing and the wrongful character of his acts.

■ In the instant case it appeared that the libellee was at all times able to transact business and had been regularly employed, even during the periods that he had voluntarily committed himself for psychiatric treatment. Nothing was offered below by the libellee by way of evidence that he did not fully understand and comprehend the wrongs that he had committed. In a case with a similar factual background, the Nebraska court in *Anderson* v. *Anderson,* 89 Neb. 570, 131 N.W. 907 (1911), stated that it would be a farce to say that such mental condition was such as to excuse him for the treatment which he had accorded his wife.

In *Smith* v. *Smith,* 33 N.J. Eq. 458 (1881), the court observed:

"A wife is equally entitled to protection, under our divorce law, against extreme cruelty on the part of her husband, where his malevolence is the result of insane delusion, as where it springs from jealousy or hatred. A distinction is to be made between such a case and a case where the husband is shown to be insane generally. In the latter case, the wife may obtain protection through

appropriate proceedings to cause her husband to be declared a lunatic. . . . Where a man is capable of managing his estate and discharging all his duties towards everyone else except his wife, whom he maltreated because of insane delusion as to her, rendering association with him by her unsupportable and unsafe, and even perhaps endangering her life, it would be irrational to deny her the protection of the law. . . ."

With this we agree.

There is no evidence here that the appellant was ever held to be insane. The testimony of Dr. William Woodruff, a qualified psychiatrist, was that he found the appellant to be agitated, disorganized, with peculiar ideas about his sexual function, and suffering from gross anxiety. Doctor Woodruff diagnosed the mental disease from which the appellant suffered as schizophrenia, although he stated that he could not place such schizophrenia in any particular classification. However, the Doctor testified that it would not be dangerous to allow the appellant to be the sole custodian of his children for various periods of time. There was no medical evidence that the appellant did not appreciate the wrongness of his conduct at the various times that he beat his wife in the presence of his children, or that he committed such acts while in the grip of an irresistible impulse.

The record disclosed that during these periods when the appellant was receiving psychiatric treatment on a voluntary basis he was continuously employed by the IBM Company as a project leader in design, undoubtedly requiring decision-making powers on his part, and was so employed at the time of hearing. We also note that he was called as a witness by his attorney, and testified at the hearing below.

The lower court, in Finding 22, *supra,* found that "while his mental condition, may, at times, have influenced his conduct, it does not account for the persistent and continued nature of his acts of intolerable severity. Nor was it, except for a brief period, such as to prevent him from making rational judgments, realizing what he was doing, and being aware of the consequences of his actions." Such finding is supported by the evidence in the case and supports the order and decree.

The second contention of the appellant is that the lower court was in error in not sustaining the defense of condonation. There is no dispute in the evidence that the parties continued to have sexual relations up to and including the night before the appellant voluntarily committed himself to the DeGoesbriand psychiatric unit. It was at this time that the parties became separated.

This was not a situation such as existed in *Davidson* v. *Davidson*, 111 Vt. 68, 10 A.2d 197 (1940), where the parties engaged in sexual intercourse on the night before separation of the libellant, and where this Court held that such act at the urging of the libellee, and with the reluctant assent condoned the existing causes for divorce.

In its findings of fact in the instant case, the lower court did find that the parties did have sexual relations up until the time they separated. But Finding 15 states:

> "In issue, however, is the voluntary or involuntary character of such acts. The libellant asserts, and we so find, that they were compelled by her anxiety to keep her family together as long as humanly possible, by fear of her husband, and by fear of his repeated threats to 'punish' her again as he had in Rhode Island."

In Finding 16, the lower court states:

> "Additionally, since the separation, the Libellee has to some degree at least continued his intolerable severity by 'cruising' around the Libellant's living quarters to a point where it became necessary to call the police, and, during one meeting over tax matters, loudly calling her a 'whore' in a public restaurant."

Viewing the evidence in the light most favorable to the libellant, as we must, her testimony was that such sexual acts were involuntary on her part and that she submitted to them because of fear of reprisal by her husband, in that he would strike her again.

On condonation, the burden of proof on the issue is on the party claiming it as a defense. *Lafko* v. *Lafko*, 127 Vt. 609, 256 A.2d 166 (1969).

> "Condonation is a doctrine of conditional forgiveness. It is the obligation of the offending partner to refrain

from further misconduct. In the present case the libellant produced no evidence that he was granted forgiveness by his wife, either actual or by implication through resumption of intimate relations after the final act of cruelty. As for prior misconduct, the innocent partner's continuing forbearance, in the hope of saving the marriage, should not work a forfeiture of relief if further violations of the covenant persist." *Lafko* v. *Lafko, supra,* citations therein omitted.

■■ Intolerable severity is condoned by voluntary marital cohabitation. *Davidson* v. *Davidson, supra,* 111 Vt. at 72. Marital cohabitation which is submitted to by one partner of a marriage which is induced by threats and fear of physical injury on the part of the other partner cannot be described as voluntary on the part of the one so submitting out of fear. Condonation, to be a defense in suit for divorce, must be the voluntary act of injured party, and is not effectual where induced by fraud, force, or fear. *Rex* v. *Rex,* 39 Ohio App. 295, 177 N.E. 527, 528 (1930); 27A C.J.S. Divorce § 60, page 202.

The finding of the lower court that the appellant's defense of condonation was not sustained is supported by the evidence, and the finding supports the Order and Decree.

*Judgment affirmed.*